B. L. BARNES *et al.*

*v.*

HALLIE BANKS.

*Opinion filed October 23, 1906.*

1. REAL PROPERTY—*title may pass, in equity, without deed under seal.* A conveyance of land, to be good in law, must be by deed under seal, but in equity a good title may be conveyed by a writing not under seal or without any writing whatever.

2. SAME—*parent may make valid gift of land to child.* Where the rights of creditors do not intervene, a parent may make a valid gift of land to his child, whether the child is in possession of the land at the time or is put in possession in pursuance of the gift.

3. SAME—*what shows a valid gift of land.* A letter from father to daughter reading, "I present you on this your 33d birthday with the house and premises now occupied by you, which includes the garden and orchard back of the house and the pasture north of the house, more fully described in my last will, in the forty-acre tract," coupled with the subsequent undisturbed possession of the daughter, constitutes, in equity, a valid gift of the fee of the premises so described, but not of the entire forty-acre tract, in which the daughter is given by the will an estate for life only, in trust.

APPEAL from the Circuit Court of Christian county; the Hon. TRUMAN E. AMES, Judge, presiding.

This was a bill in chancery filed by the appellee, Hallie Banks, against B. L. Barnes and D. W. Johnston, executors and trustees of the estate of Albert G. Barnes, deceased, and Henrietta Barnes, widow, and the children and some grandchildren of said Albert G. Barnes, as heirs and devisees, in the circuit court of Christian county, for the purpose of enforcing and construing the following instrument in writing:

"*Mrs. Hallie Banks*—I present you on this your 33d birthday with the house and premises now occupied by you, which includes the garden and orchard back of the house and the pasture north of the house, more fully described in my last will, in the forty-acre tract with other lands.

"Very truly your father,

*June 4, 1902,*                A. G. BARNES."

Albert G. Barnes died testate August 8, 1904. By his will he devised certain moneys and real estate to the trustees named in said will, and directed them to pay to appellee, during her life, the income therefrom. The will bears date November 16, 1900.

The bill alleged that by the writing of June 4, 1902, Albert G. Barnes gave appellee 5.20 acres of land, particularly described in the bill by metes and bounds; that prior to the death of said A. G. Barnes he executed a will, in which he described the land and premises referred to in the writing of June 4, 1902, as the south-west quarter of the south-east quarter of section 28, township 13, north, range 2, west of the third principal meridian, in Christian county, Illinois; that by virtue of the uncertainty and ambiguity contained in said instrument it is impossible to ascertain with certainty how much land the said A. G. Barnes intended to convey to complainant, and asks the court to construe said written instrument in connection with said will, and determine whether or not it was the intention and purpose of said A. G. Barnes to convey in fee simple to appellee the said premises first above described, or the entire forty-acre tract of land last above described; that the last will and testament of said A. G. Barnes contained the following provision: "I devise in fee to the executors of this my will, as trustees, and unto the survivors and successors of them, in trust for the purposes hereinafter named, the following described stocks, moneys and real estate, to-wit:" and it then describes the south-west quarter of the south-east quarter of section 28 aforesaid, together with other lands described therein; that said will further provides: "The said trustees and their successors in trust shall use, manage, rent and control said real estate above in this item described, in the manner in their judgment most advantageous to secure annual income therefrom and to preserve said property;" that the said trustees shall pay all taxes and assessments to be made thereon, keep up repairs and make necessary im-

provements; that out of the annual rents, profits and interest collected, after paying all proper expenses, etc., they shall annually, or oftener, if they deem proper, pay the remainder of the annual income from the lands, bonds or other investments to his daughter, Mary Henrietta Banks, (known in this suit as Hallie Banks,) during her natural life, and then, after providing that the trustees, in their discretion, may permit his said daughter to occupy said land and to make her home thereon, farm it, and receive the rents and profits therefrom, while she pays all the taxes thereon, the will provides: "Upon the decease of my said daughter, leaving a child or children, my said trustees shall, by, proper deed of conveyance, convey to such child or children, or their descendants, (descendants of any deceased child to take a parent's share,) my title and all the title held by them as trustees herein. If my said daughter, Mary Henrietta Banks, shall die leaving no child of her body, nor descendant of such child, then surviving, I direct that the said trustee then acting in this trust shall by proper deed convey the said real estate, bonds, stocks, mortgages and moneys to my sons and daughter (naming them) in equal shares." It is further alleged in said bill that B. L. Barnes and D. W. Johnston, defendants, were duly appointed executors, have qualified and are now acting as such, and have assumed control of the said estate as directed by said last will and testament; that the said B. L. Barnes and D. W. Johnston, trustees as aforesaid, refuse to recognize the written contract above described as conveying said real estate and refuse to recognize the complainant's ownership in the same, and have inventoried the same as a part of the property of the said estate of Albert G. Barnes, deceased, and claim to hold the same, as trustees, for the complainant, with remainder in fee to the heirs surviving, in accordance with the provisions in the said will. The bill then prays that complainant may be decreed to be the owner in fee of said premises and that the said contract may be con-

strued by the court and decreed to include the entire forty-acre tract as being included in said conveyance, and that the defendants be decreed to have no right, title or interest, in remainder, reversion or otherwise, in said premises.

The defendants moved to dismiss the bill for want of equity, which was refused by the court, after which a general demurrer to the bill was filed. The demurrer being overruled by the court, defendants answered. Upon the hearing the court found for the complainant and entered a decree finding that the allegations of the bill are true, and that A. G. Barnes, by the said instrument of June 4, 1902, intended to and did convey the entire forty acres above described to Mrs. Hallie Banks; that at the time of the execution and delivery of said instrument he placed the said Hallie Banks in possession of said premises as grantee and owner in fee simple, and that he did by said instrument intend to convey the entire forty acres above described to the complainant, and that this was made subsequent to the execution of his will, and that the complainant has used and occupied said premises from thence to the present time and made lasting and valuable improvements thereon. To the rendition and approval of this decree defendants except and bring the case to this court by appeal.

J. C. & W. B. McBRIDE, for appellants:

It is essential that every deed of conveyance must contain words which import a grant, release or transfer of the land or the title to the same, as it is only by apt and proper language that the title can be passed or transferred from one person to another. *Johnson* v. *Bantock,* 38 Ill. 11.

Calling an instrument a deed, or delivering it as such, or believing or intending it to be such, will not make it a deed without a seal actually affixed thereto. 3 Washburn on Real Estate, 244.

To enforce specific performance of a contract such contract must be certain and definite. Oral statements will not

relieve it of the uncertainty. *Clark* v. *Clark,* 122 Ill. 388; *McCartney* v. *Ridgway,* 160 id. 129.

To constitute a valid gift *inter vivos,* possession and title must pass to the donee, and it must be irrevocable. *Barnum* v. *Reed,* 136 Ill. 388.

A court of equity will not enforce a voluntary contract or an unexecuted gift where the transaction is incomplete and there is no consideration. The court, on general principles, will not complete what it finds imperfect. *Wadhams* v. *Gay,* 73 Ill. 415.

Voluntary agreements are not enforcible in courts of equity, even though under seal. *Rountree* v. *Smith,* 152 Ill. 493; *Hoag* v. *Adrian College,* 83 id. 267.

A gift *inter vivos* incomplete at the death of the donor, the subject of which has vested in his legal representatives, cannot be completed by the courts. *Williams* v. *Chamberlain,* 165 Ill. 210.

HOGAN & WALLACE, for appellee:

The written instrument which is made the basis of this suit, and which was accompanied at its delivery by the surrender of possession, was a valid and binding stipulation and sufficient to convey title.

A parol contract to sell a tract of land is binding in chancery as a written contract unless the Statute of Frauds is set up to defeat the agreement. *Dyer* v. *Martin,* 4 Scam. 146; *Esmay* v. *Gorton,* 18 Ill. 483.

Contracts not under seal, and even contracts not in writing affecting interests in land, are recognized in equity if they have been so far performed that to permit a party to repudiate them would be a fraud. *Ashelford* v. *Willis,* 194 Ill. 492; *Railroad Co.* v. *Wood,* 189 id. 352; *Pearce* v. *Pearce,* 184 id. 289.

The performance of a verbal contract will take the case out of the Statute of Frauds.

A gift by a father to a child, accompanied with the delivery of possession, is enforcible in equity. *Sanford* v. *Davis*, 181 Ill. 570; *Clancy* v. *Flusky*, 187 id. 605.

A mere gift or voluntary conveyance is as binding as any other undertaking when executed. *Welsch* v. *Bank*, 94 Ill. 194.

A gift evidenced by writing cannot be rescinded by the giver. *Crans* v. *Kroger*, 22 Ill. 74.

A conveyance of land after delivery is valid and binding on the grantors without acknowledgment. *Robinson* v. *Robinson*, 116 Ill. 250.

A deed need not be under seal. Tiedeman on Real Property, 783; *Barrett* v. *Hinckley*, 124 Ill. 36; *Ashelford* v. *Willis*, 194 id. 492.

Any words of conveyance will be sufficient if they establish clearly the intention to transfer the title of estate. Tiedeman on Real Property, 630.

A good and valuable consideration is not necessary in order to pass title to real estate. Tiedeman on Real Property, 625.

The term used in this written instrument for the purpose of conveyance is the word "present." The definition of the word "present," as given by Webster, is to make a gift or donation; to bestow; to give; to grant; to confer. The words "give" and "grant" are operative words. The word "present" is synonymous with "give" and "grant." Tiedeman on Real Property, 630.

It is not essential that the instrument to convey should follow any exact form of words, provided the intention to convey is expressed. *Cross* v. *Weare Commission Co.* 153 Ill. 499.

Oral evidence is always admissible to show what property is meant in the deed and to explain a latent ambiguity. *Marshall* v. *Gridley*, 46 Ill. 247; *Clark* v. *Powers*, 45 id. 283; *Daugherty* v. *Purdy*, 18 id. 206; *Young* v. *Lorain*, 11 id. 624; *Doyle* v. *Teas*, 4 Scam. 202; *Decker* v. *Decker*,

121 Ill. 341; *Fisher* v. *Quackenbush,* 83 id. 310; 1 Am. &
Eng. Ency. of Law, 538.

Oral evidence is admissible for the purpose of enabling
the court to view the instrument from the standpoint of the
parties who executed it. *Fowler* v. *Black,* 136 Ill. 363.

Mr. JUSTICE FARMER delivered the opinion of the court:

We are unable to agree with the construction sought to
be placed upon the writing of A. G. Barnes of date June 4,
1902, by counsel for appellee. It does not by any of its
language or terms purport to give appellee an interest in the
forty-acre tract, except certain designated portions. As we
read and understand it, instead of purporting to be a gift of
the whole forty acres, it was of the "house and premises
now occupied by you, which includes the garden and or-
chard back of the house and the pasture north of the house."
At the time this paper was written and delivered, appellee,
with her husband, was living in the house, but the evidence
shows her father was in possession and control of almost
the entire forty, and always had been. He was a breeder of
fine horses on another farm, called Oak Lawn farm, and the
forty in controversy was equipped with barns and track for
training them, and was used and known as the "training
farm." The appellee's husband had some interest, with her
father, in some horses and assisted in their training and
care. His interest appears from the evidence to have been
in the profits, if any were made. Mr. Barnes did not de-
liver to appellee the possession of the whole forty when he
gave her the writing, for the proof shows he had possession
and control of the track, meadow land and barns where the
horses were kept, which included all the property, except the
grounds occupied by the residence and out-buildings, where
appellee resided, and the orchard and garden, and the pasture
north of the house. The orchard and garden were west of
the house. A sister of appellee testified the pasture was sep-

arated from the other part of the tract by fences. The evidence shows that after the date of the instrument Mr. Barnes controlled the use of all the tract except the premises mentioned in the writing, directed what crops should be planted, and disposed of them after they were harvested. Even after his death appellee bought from and paid the executors of her father's will for hay and straw raised on the land the season before he died. These things tend to show how the parties themselves understood and construed the instrument. If appellee's father had intended to give her the whole forty acres, why did he limit the gift to "the house and premises now occupied by you, which includes the garden and orchard back of the house and the pasture north of the house?" According to the evidence these portions of the tract, from the manner in which they were fenced and the uses to which they were put, could easily be located from the description given of them. Barnes was the owner of a large amount of real estate and appears to have been a man of fair intelligence. He must have known, if he desired to give his daughter the whole forty, that in doing so it would not be necessary to designate particular portions of it. It seems clear to us that, whatever of estate he intended to give appellee by the instrument, he intended to limit it to particular portions of the forty mentioned. After saying he presented her the house and premises occupied by her, to make it plain that he did not mean the buildings only, he was particular to say what he meant by that and what he intended it to embrace. The clause, "more fully described in my last will, in the forty-acre tract with other lands," does not enlarge the description preceding it. He had nowhere in the instrument described the forty by giving its subdivision of the section, and evidently the reference to the will was for a better description of the forty-acre tract, part of which, the instrument recited, the maker presented to appellee.

Having determined the instrument must be confined to the particular portions of the tract mentioned therein, it now

remains to be determined what, if any, estate or title in these portions it conveyed to appellee.

The will, to which reference is made in the instrument, was executed November 16, 1900. The paragraph in which appellee is provided for, gives to the executors, as trustees, "for the purposes hereinafter named, the following described stocks, moneys and real estate." Then follows the description of several tracts of land, including the forty in controversy, and certain money, and it then proceeds to give appellee the annual income from the land during her life, to be paid to her by the trustees named in the will. Said trustees were given the possession, management and control of it, with the discretion of allowing her to live on and farm it and receive the rents and profits therefrom, if she would in proper time pay all taxes, charges and encumbrances against the land, keep up repairs thereon and not commit or suffer any waste. At the time the will was made and at the time the written instrument of June 4, 1902, was delivered to appellee, she was in possession of the premises therein described and had been for several years, receiving the proceeds therefrom and paying no rent. It cannot be presumed that her father meant the writing to be a meaningless and useless paper. He must have intended to give his daughter some right and interest in the land she had not possessed and enjoyed before, and it must have been an interest or estate different from that given her by the will. There can, we think, be no doubt he intended the interest and estate given her by the writing to take effect upon the delivery of the paper to her. The language used would not justify the conclusion that he intended merely to inform appellee he had made provision for her in his will with reference to this land. The writing says: "I present you on this your 33d birthday with the house and premises," etc. This is equivalent to saying, "I now give you the house and premises." It was not a promise that he would give her the land nor information that he had given her some rights in it by the

will. The interest devised by the will included the whole forty, while the writing of June 4, 1902, only embraced certain designated portions of it.

A conveyance of land, to be good at law, must be by deed under seal, but in equity a good title may be conveyed by a writing not under seal, or without any writing whatever. (*Ashelford* v. *Willis,* 194 Ill. 492.) This case does not fall within that line of verbal gifts or conveyances from parent to child which have been sustained because, upon the faith of the verbal conveyance or gift, the donee entered into possession and made lasting and valuable improvements. It does not appear from the evidence that appellee has done more than paper three rooms in the house. The validity of this instrument and the nature and extent of the estate conveyed by it depend upon whether the father of appellee intended it was a gift to her. A parent has the right to make a gift to his child, and when fully executed it is irrevocable. (*Eckert* v. *Gridley,* 104 Ill. 306; *Finucan* v. *Kendig,* 109 id. 198; *Dugan* v. *Gittings,* 43 Am. Dec. 306; 14 Am. & Eng. Ency. of Law,—2d ed.—1034.) "A gift of property, real or personal, made by a parent to a child, is a valid gift, where no creditors intervene, and who, by the gift, are subjected to no loss." (*Bay* v. *Cook,* 31 Ill. 336; *Patterson* v. *McKinney,* 97 id. 41.) By the language of the writing the gift took effect and was complete immediately upon the delivery of the paper. The fact that appellee was in possession at the time the gift was made does not make the case different from what it would have been if she had not been in possession at that time but had been given the possession in pursuance of the gift. (14 Am. & Eng. Ency. of Law,—2d ed.—1019.) There was proof that appellee's father had said to certain parties he had given her "the place where she lived;" that he had given "the place to Hallie," or that he was going to "deed it to Hallie." Some of these statements were made before the delivery of the writing of June 4, 1902, and as to others the time when they were made

was not shown by the evidence and is uncertain. Nor could the witnesses say whether he meant the whole forty or the premises where the house was. The more reasonable conclusion to be drawn from these statements is, that Mr. Barnes had reference to his will when he spoke of having given or intending to give the land to appellee. His acts of dominion and control over all the tract after the making and delivery of the written instrument, except those portions designated therein, are inconsistent with the theory that he referred to it as a conveyance by which he had given appellee the land. There is evidence tending to show that prior to June 4, 1902, Barnes had paid for repairs made on the premises occupied by appellee and after that date appellee paid for such repairs as were made. We think it apparent from the evidence that the relations of Barnes toward the premises mentioned in the written instrument ended with the delivery of that paper. As to the residue of the forty-acre tract, he continued to possess and control it until his death. We conclude, therefore, that the premises described in the written instrument were a gift to appellee from her father; that the gift was absolute and irrevocable, and passed to her the title in fee simple to the premises designated in the instrument dated June 4, 1902.

It is also to be observed that appellee's father never attempted to revoke the gift. After making his will one of the beneficiaries died, and he also sold some of the property disposed of by the will. He made three codicils to his will after June 4, 1902, but in none of them does he make any change in the provision originally made for appellee.

The exact boundaries of the premises should be measured and determined from the fences and other boundaries separating them from the rest of the forty-acre tract as they existed June 4, 1902, and to those premises the fee be decreed to be in appellee, with the right to control and manage it without interference from the trustees. The remainder of the forty acres passes by the will of appellee's father, and

is therefore under the control and management of the trustees named in the will.

The decree of the circuit court is reversed and the cause remanded, with directions to further proceed in accordance with the views herein expressed.

*Reversed and remanded.*