## Ellen A. Harris, v. William A. Harris et al.
## William A. Harris, Appellee (Cross-bill), v. Ellen A. Harris, Appellant.

### Gen. No. 26,011.

1. GIFTS—*what essential to validity in case of chose in action.* All that the law requires to constitute a valid gift of a chose in action, such as the rights held by reason of owning certificates of stock, is an executed and delivered assignment or some document of equivalent import.

2. GIFTS—*what sufficient to transfer title to corporate stock.* A written instrument stating that the maker thereby sold, assigned, transferred and set over to his wife, certain shares of corporate stock, with full authority to her to have them transferred upon the books and records of the corporation, and appointing her his attorney to cause the transfer to be made, which instrument was signed, delivered, acknowledged and recorded, passed all the maker's rights in the stock to his wife.

3. CORPORATIONS—*what showing essential to compel transfer of stock on books of corporation.* In a suit to compel the transfer upon the books of a corporation of shares of the corporation which complainant claims as a gift from her husband, it is necessary, to make out her case and justify a decree for a transfer, that she show by a preponderance of evidence what she alleged in her bill of complaint.

4. CORPORATIONS—*when burden of proof, on one seeking to set aside transfer of corporate stock.* In a suit to compel the transfer upon corporation books of shares of stock claimed by complainant as a gift from her husband, where the husband by cross-bill asks that the assignment of the stock be set aside, the burden of introducing proof that the assignment is not what it purports to be is upon him.

5. CORPORATIONS—*what sufficient to make out prima facie case in suit to compel transfer of stock on books.* Where complainant in a suit to compel the transfer of shares of stock introduced in evidence an assignment of the stock to her and proved its authenticity, she made out a prima facie case, and it devolved upon defendant to introduce counteracting evidence, both in support of his answer and of his cross-bill, asking to have the assignment set aside.

6. GIFTS—*sufficiency of evidence to show gift of corporate stock inter vivos.* In a suit involving title to shares of corporate stock

claimed by complainant as a gift from her husband *inter vivos*, evidence reviewed and *held* ample to justify the conclusion that the gift was made without qualification, although it took nearly all of his estate, and that such shares should be transferred to complainant upon the books of the corporation.

Appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1920. Reversed and remanded with instructions. Opinion filed October 5, 1921. *Certiorari* denied by Supreme Court (making opinion final).

OLIVER M. OLSON, for appellant; LEROY V. PENWELL, of counsel.

PRITZKER & PRITZKER, for appellee; NICHOLAS J. PRITZKER, of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

On April 14, 1915, William Harris, the defendant, executed and acknowledged a written assignment to his wife, Ellen A. Harris, the complainant, of all the household furniture of the second apartment at 5141 Greenwood avenue, Chicago, and by the same instrument sold, assigned and transferred to her 110⅔ shares of the capital stock of the Union Interior Finish Company, "with full authority to my said wife to have said certificates of stock transferred upon the books and records of the said Union Interior Finish Company to her," also giving her authority to have the stock transferred to her. After the instrument was signed, acknowledged, recorded and mailed to her, she took it over to the Union Interior Finish Company, and demanded that a transfer be made to her on the books of the company. No transfer was made and in January, 1917, the complainant filed a bill of complaint praying that the company be compelled to make the transfer. The defendant, her husband, answered, claiming that the stock was not delivered; that

he only owned 100 shares; that that stock was held by Greenebaum's Bank for a loan of $7,000; that he never delivered the instrument; that just prior to April 14, 1915, he was ill and advised by his physician that he had not probably long to live, not in any event over 6 months; that the complainant, his wife, suggested that he make a disposition of his property in anticipation of death; that he then signed the instrument with the understanding that it was not to be delivered, but should be returned to him and be by him delivered if he felt that death was impending; that he and his wife have both, since, considered it a nullity; that he did not read it and did not know its contents; that since its execution he has from time to time, with her knowledge, voted the stock; and that said stock belongs to him.

On October 18, 1917, he filed a cross-bill claiming that being informed that his end was approaching, he executed the instrument, but with the express understanding with his wife, that in the event of his surviving his illness it was to be declared null and void; and praying that the instrument be declared null and void.

The cause was referred to Master in Chancery Humphrey. Hearings were, had, evidence taken, and the master found that the document in question carried out the intention of the parties at the time it was executed, and that the complainant became the owner of the 100 shares of stock and was entitled to have them transferred upon the books of the company to her; and recommended a decree to that effect, and also, that the cross-bill be dismissed. On September 23, 1918, a decree was entered granting the relief prayed for by the complainant, Ellen A. Harris. On October 8, 1918, on motion of the solicitor for the defendant, William A. Harris, that decree was vacated. The complainant then by leave of court filed a supplemental bill of complaint making Reynolds and

Werkmeister parties. The latter answered, and the matter was then again referred to Master in Chancery Humphrey. On June 27, 1919, the master filed his report confirming his former report as to the ownership by the complainant of the 100 shares of stock, and, further, recommending that Werkmeister and Reynolds, who had purchased between them the 111⅔ shares at a public sale, should, upon payment to them of the amounts of their bids, with interest, deliver to the complainant Ellen A. Harris the 111⅔ shares of stock and that a decree be entered in accordance therewith and as recommended in his original report. Subsequently the report of the master, and exceptions thereto, came before the chancellor, and on November 25, 1919, he found "that the bill of sale offered in evidence * * * was given * * * as a gift in anticipation of death and without any further consideration; that the defendant was, at the time of making said bill of sale, advised that he had not long to live, * * * and that subsequent to the date of making said bill of sale and gift in anticipation of death, he revoked the gift," etc. A decree was then entered, dismissing the bill of complaint for want of equity; and, as to the cross-bill, that the bill of sale is void and of no effect.

It is contended by counsel for the complainant that the instrument of April 14, 1915, constituted a gift *inter vivos;* and as to the defendant was irrevocable; and, on the other hand, it is contended by counsel for the defendant, William A. Harris (1) that there was no delivery; (2) that the evidence of intention to make a gift *inter vivos* must be clear and unmistakable; (3) that the burden of proving there was a gift, was upon the donee; (4) that the evidence failed to show that the gift was unconditional.

The defendant, William A. Harris, was a building contractor, and president and director of the Union Interior Finish Company, in which he owned 100

shares of stock. The total capital stock of the company was $35,000 made up of 350 shares, each with a par value of $100. In 1915, the company paid a dividend of 50 per cent, and in 1916, 20 per cent, and in 1917, 50 per cent. Some time prior to April 14, 1915, 111⅔ shares of stock were deposited by Harris with the Ft. Dearborn National Bank, as security for a loan of $12,000. Of the 111⅔ shares he actually owned only 100, as he had already given 11⅔ shares to one George L. Harris, though no transfer had been made on the books of the company. In 1915, William A. Harris (hereinafter called the defendant) lived with his family at 5141 Greenwood Ave., Chicago. For some time prior to April 14, 1915, the defendant had been so addicted to drink that his health had become somewhat impaired; and on April 14, 1915, as the result of some conversation with his physician, one Dr. Korssell, and others, a meeting for the purpose of some disposition of his property was held at the office of his attorney, Elmer H. Adams. It is the evidence of Mr. Elmer H. Adams, who stated that the defendant was and has been a client of his firm, that on April 14, 1915, the defendant, his wife, together with Dr. Korssell, defendant's physician, and one Mc-Gimsie, a fellow stockholder and director, called at his law office in the Ft. Dearborn Bank Building; that the defendant stated that he wished Adams to prepare a bill of sale transferring certain household furniture and 110⅔ shares of the capital stock of the Union Interior Finish Company to Mrs. Harris; that he then asked the defendant what was his purpose; that the defendant said "he wanted to give it to her; that he was going to Florida, and he wanted to turn that over and give it to his wife, all that property"; that he, Adams, asked the doctor what he thought about the defendant's health and the doctor said he was all right; that all he needed was a rest down in Florida; that he was going down there for a rest;

that he (Adams) then prepared the bill of sale; that the defendant signed it on his desk; that he (Adams) then told one Abbott to take the defendant over to the municipal court and have it acknowledged and then have it recorded; that he told the defendant's wife that when it came back he would mail it to Mrs. Harris.

It is the evidence of Mr. McGimsie that he was present at Adams' office; that Adams was the attorney for the defendant and for the company; that he heard the document read twice by Adams; that the figures $111\frac{2}{3}$ were changed to $110\frac{2}{3}$ so as to leave one share in the defendant's name, that he might remain eligible as an officer of the company; that the change was made at the suggestion of Adams; that he went to Adams' office at the request of the defendant; that at the office the defendant said, "I want to turn my stock and furniture over to my wife"; that after the document was drawn up he went to the municipal court building where it was signed and acknowledged before the clerk; that in the fall of 1915, the defendant spoke of turning $11\frac{2}{3}$ shares over to George Harris; that the witness said, he could not do it; that the defendant then said, he thought he had given his wife only 100 shares.

It is the evidence of Dr. Korssell, defendant's physician, that on the evening before April 14, 1915, the defendant told him he had some legal matters he wanted him to witness, and that he wanted the doctor to arrange to take him ,to Englewood Hospital and put him under treatment; that he had concluded to turn over his interest in the company to his wife for her protection and maintenance and for his two daughters; that the defendant said he was in a condition where he felt it was necessary for him to have medical treatment to help him get away from the liquor habit; that the defendant called for him, the doctor, the next day, April 14, 1915; that on that day the defendant's

condition was "fine"; that about a month prior he had advised the defendant to make the transfer; that the defendant was so heavy a drinker it might have killed him; that all his ailments, nervousness, sleeplessness, bad stomach and liver, were the result of alcoholism; that the defendant had been in the Englewood Hospital before for a period of 3 or 4 weeks for the same trouble; that his mentality was very little affected; that he was irritable, sensitive and sleepless, but his mind was clear, and apparently his mentality was perfect.

The evidence of Mary McGimsie, a sister of the complainant, is to the effect that she was present at the Harris home on April 14, 1915, when Mr. McGimsie, Dr. Korssell and Mr. and Mrs. Harris were present; that there was nothing said there about reassigning or surrendering the stock in the event Harris got well; that the doctor said nothing about Harris not being able to survive his illness for 6 months.

The foregoing evidence on behalf of the complainant; the signed, acknowledged, recorded and delivered written assignment; and the testimony of Adams, Korssell and Mr. and Mrs. McGimsie, by itself proves a carefully premeditated and unqualified gift to the complainant of all the rights which he owned in the stock in question. And, substantially, the only countervailing evidence is that of the defendant himself and his son, Thomas R. Harris. The evidence of the defendant is to the effect that on April 14, 1915, he was ill at home; that there were present Dr. Korssell, Mr. and Mrs. McGimsie, his wife and Thomas R. Harris, his son; that the doctor said: "Unless you get a change for the better, you cannot survive your sickness six months. You have got a weak heart"; "You are bordering on nervous prostration." "Why don't you transfer by assignment, your interest in the Union Interior Finish Company? If you will do that, I will give you my word of honor as a man and a

Mason, that if you survive this sickness, that Mrs. Harris will cancel this assignment''; that he talked the matter over with his wife, and that he said he thought it would be better than making a will, as it would save going through the probate court if he should die; that they went to Adams' office; that Adams drew up the document, but apparently not according to his instructions; that he signed the document and that nothing was said about recording it; that in Adams' office the doctor told Adams, he, the defendant, was a very sick man; that he had made an agreement with his wife to make the assignment to her, but if he survived, it should be canceled; that he, the defendant, said, if anything happens to me I want it to go to my wife and children. He further testified that he did not read the document and that he knew nothing of his wife having it until the following January.

The evidence of the son, Thomas R. Harris, is to the effect that he heard his mother say at home, just before the meeting at Adams' office, if her husband would give her a bill of sale, she would "as soon as he got in good shape" return it to him; that he was not present in Adams' office when the document was signed; that his mother after coming out of Adams' office, assured his father she would return the bill of sale to him, and that she would not put it on record if he survived his illness; that he could trust her if anybody.

The evidence of George Harris, a nephew of the defendant, merely pertains to efforts and conversation as to the document after its execution and delivery. What evidence there is on that subject merely tends to show the refusal of the complainant to give it up.

The evidence of the defendant as to his alleged conversation with the doctor is denied in toto by the latter.

(1) As to the contention of counsel for the defend-

ant, that there was no delivery: All the law requires in order to make a valid gift of a chose in action, such as the rights held by reason of owning certificates of stock, is an executed and delivered assignment, or some document of equivalent import: *Wilson v. Keller,* 9 Ill. App. 347. "An instrument purporting to pass a present interest in a chose no matter what form the transaction may assume, will be treated in equity as a valid assignment:" Bispham's Equity, 67, 222. "A mere gift or voluntary agreement is just as binding as any other undertaking, when executed:" *Welch v. Belleville Sav. Bank,* 94 Ill. 191; *Savage v. Gregg,* 150 Ill. 161; *Steingrebe v. French Mirror & Glass Beveling Co.,* 83 Ill. App. 587.

The document in question, which was signed, delivered, acknowledged and recorded by the defendant, recited: "For and in consideration of one dollar ($1.00) and other good and valuable considerations, and in consideration of love and affection * * * I also herewith sell, assign, transfer and set over unto the said Ellen A. Harris, my wife, * * * one hundred ten and two-thirds (110⅔) shares of capital stock of Union Interior Finish Company, one hundred (100) of said shares * * * being now on deposit * * * with full authority to my said wife to have said certificates of stock transferred upon the books and records of the said Union Interior Finish Company to her," etc. It also appointed her his attorney to cause the transfer to be made. We are of the opinion that the written assignment, considered by itself, passed all the defendant's rights in the stock to his wife.

(2) As to the requirement that the evidence of intention to make a gift *inter vivos* must be clear and unmistakable: That is merely a question as to the quality and quantity of the evidence that is adduced. Whether or not the evidence which was actually pre-

sented was sufficient in every way, we shall later consider.

(3) As to the contention that the burden of proving a gift *inter vivos* is upon the donee, the complainant: To make out her case against the company and justify a decree that the stock should be transferred to her upon its books, it would be necessary for her, by preponderance of the evidence, to show what she alleged in her bill of complaint. But as to the defendant, who in his cross-bill of complaint asked that the assignment be set aside, the burden of introducing proof that the assignment was not what it purported to be was upon him.

When the complainant introduced the assignment in evidence and proved its authenticity, she made out a prima facie case; and there it fell to the lot of the defendant to introduce counteracting evidence, both in support of his answer and his cross-bill of complaint.

(4) As to the contention that the evidence failed to show an unconditional gift *inter vivos:* The assignment was apparently made after some premeditation. The defendant states that Dr. Korssell, Mr. and Mrs. McGimsie, his son and wife, met at his home on April 14, 1915. At that time his health had been somewhat impaired by intemperate drinking. He says he was ill. At that meeting, at his home, the matter of the transfer was undoubtedly discussed; although he does not agree that an unconditional gift was there and then decided upon. But the evidence as to what then transpired at his home, taken as a whole, quite sufficiently proves such a gift was intended. Practically all of those present at his home went at once down town to Adams' law office; not only the defendant, but his wife, his son, Mr. and Mrs. McGimsie and Dr. Korssell; and they were there, seemingly, for one purpose, to take part in the negotiations. The defendant admits he went there immediately after the meeting

at his home, and that he signed the document in Adams' office. He says he did not read it. McGimsie says he heard it read twice, that the first time the number of shares mentioned was "111⅔," and that after Adams explained that, in order to preserve the defendant's eligibility to office in the company, it was necessary for him to be a stockholder, the number of shares was changed to "110⅔," and it was then read again. His testimony is consistent with the document as it now appears, the number of shares being set forth as "110⅔." Further, the evidence of Adams, the defendant's attorney, who had acted as attorney for him before, is strongly persuasive. Adams testified he asked the defendant "what the purpose of it was," and that he said, "he was going to Florida, and he wanted to turn that over and give it to his wife, all that property." The evidence of the defendant as to the transfer being in any way conditional is quite overcome by the testimony of other and disinterested witnesses. The document by itself is a plain, straightforward, unconditional assignment, and it was signed, acknowledged, recorded, and then delivered to the complainant.

After a careful analysis of the evidence, we are led to the same conclusion as the master, who, alone, saw the witnesses, that the document in question contained and carried out the full intention of the defendant, and that, as a result, the complainant became entitled to have the 100 shares of the capital stock transferred to her name on the books of the company. In our judgment the evidence is quite clear and convincing that it was an absolute gift *inter vivos* and, even though it took from him practically his entire estate, he had under the law the right to make such a disposition, and, once, fairly and knowingly made, it became, by him, irrevocable. Neither the presumptions that arise from the intimate and close relationship of husband and wife, and from the fact that it took

nearly all his estate, are sufficient to overcome the strong evidence of an unconditional gift *inter vivos*. No question as to a gift *causa mortis* or gift *inter vivos* in contemplation of death in view of the evidence, really arises. *Merrifield's Estate v. People*, 212 Ill. 400. His repudiation of the simple text of the assignment is not, in view of the other evidence, at all persuasive, and it is helped but little by that of his son. The complainant's case rests substantially on the signed document, and the testimony of Adams, Dr. Korssell, and Mr. and Mrs. McGimsie. It is of no important significance that the complainant was not asked whether the document was to be a nullity if he survived his illness. There is ample evidence, in our judgment, to induce and justify the conclusion that the gift was made without any qualification whatever, and that the transfer should be made upon the books of the company as provided in the document dated April 14, 1915.

The decree will, therefore, be reversed, the cause remanded, with instructions to vacate the decree, and enter a decree in accordance with the complainant's bill of complaint and supplemental bill of complaint, and in accordance with the findings of the master in his reports dated respectively January 19, 1918, and June 23, 1919; and the cross-bill of complaint be dismissed for want of equity.

*Reversed and remanded with instructions.*

O'CONNOR, P. J., and THOMSON, J., concur.