## ROSENWALD v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Seventh Circuit.
June 7, 1929.

No. 4116.

Stuart Chevalier, of New York City, for appellant.

John Vaughan Groner, of Washington, D. C., for appellee.

Before EVANS and PAGE, Circuit Judges, and WHAM, District Judge.

PAGE, Circuit Judge. This is an appeal from the Board of Tax Appeals sustaining the tax deficiency found against petitioner on

his income tax returns for the years 1919, 1920, and 1921.

The question here is whether the dividends on stocks, interest upon a note, rents from real property, and coupons from Third Liberty Loan bonds, under the circumstances of this case, are taxable as income in the hands of petitioner.

In 1917 petitioner, with his wife, son, and son-in-law organized under the corporation laws of Illinois the Julius Rosenwald Fund (here called fund) for charitable, scientific, educational, and religious purposes, to be managed by four trustees, elected annually. The four incorporators have always been the trustees. Petitioner was elected president and treasurer. The by-laws required and empowered the treasurer to keep a bank account, and also provided that, with the consent of the petitioner, the treasurer "may keep a bank account and make disbursements therefrom under the name and style of 'Julius Rosenwald.'" It is asserted, and not denied, that all funds were deposited in, and paid from, petitioner's personal account. It does not appear that otherwise than in the name of "Julius Rosenwald" the fund ever received or paid out any money.

In October, 1917, a gift that is not here in question was made to the fund by a letter that is important and is here set out:

"To the Board of Trustees of the Julius Rosenwald Fund:

"I hereby give you twenty thousand (20,000) shares of the common capital stock of Sears, Roebuck and Co., which I have transferred to and caused to be issued in your name. This gift is made for the general corporate purposes of The Julius Rosenwald Fund, and the principal as well as the income may be used in your discretion for any of the corporate purposes of the Fund.

"In case at the time of my death any part of said gift or any future gift which I may make to the Fund remains undistributed, or should the Fund receive any share of my estate, then and in any such event such undistributed part of any gift or gifts from me or share of my estate shall be used primarily to the extent, prorata, to which it may reach toward the payment of yearly contributions for five (5) years after my death to the donees of regular annual subscriptions in accordance with the following plan to wit:

"The Fund shall at all times maintain a book which shall be known as 'List of Julius Rosenwald's Regular Annual Subscriptions', in which at my direction shall be entered a list of regular annual subscriptions which I desire to make or have made for charitable uses. Said list shall contain the names of various donees and the respective amounts of the annual subscriptions. Such list may be modified or varied at my discretion during my life. It shall not be obligatory upon the Fund to donate or pay the amounts shown by said list during my lifetime. After my death the Fund shall, however, donate to such donees appearing upon said list, the following sums:

"Any subscription shown by said list, or any part thereof remaining unpaid for the then current fiscal year of the donee; also the following further sums: during the first fiscal year of each donee after my death, one hundred (100%) per cent, during the second such fiscal year after my death, eighty (80%) per cent, during the third such fiscal year after my death, sixty (60%) per cent, during the fourth such fiscal year after my death, forty (40%) per cent, and during the fifth such fiscal year after my death, twenty (20%) per cent, of the respective amounts of regular annual subscriptions to said respective donees as shown by said list.

"For the purpose of guarding against loss any of the intended beneficiaries of said plan whose names, through inadvertence or neglect, may not appear upon such list, the Fund may also make like payments to any corporations, associations or bodies, organized for charitable purposes, to which I or the Fund, at my request, have been a regular annual subscriber or contributor for at least two (2) consecutive years, including the then current fiscal year, immediately prior to my death, based upon the last regular annual subscription to such other corporation, association or body. The Trustees of the Fund shall be the sole judges as to what other corporations, associations, or bodies shall receive such like payments and the proper respective amounts thereof.

The above provisions are made so that the said respective donees may not be suddenly deprived, by reason of my death, of the regular annual contributions which I have been making or may hereafter make or cause to be made to them, and are not intended to set a maximum upon the amounts which the Trustees, after my death, may, in their discretion, give to any of said donees.

"Dated October 31, 1917."

"Yours truly, Julius Rosenwald."

The following gifts were also made by petitioner:

"To the Board of Trustees of the Julius Rosenwald Fund:

"I hereby assign to you all dividends to which I may become entitled as the owner of any and all shares, preferred and common, of the capital stock of Gimbel Brothers, New

York, a corporation of New York, for a period of five (5) years from this date; also to all interest payable within five (5) years from this date on a certain loan of one million ($1,000,000) dollars made to I. Gimbel and other stockholders of Gimbel Brothers, New York, secured by a certain note for one million ($1,000,000) dollars, payable to my order, dated April 30, 1914, and signed by said I. Gimbel and others.

"This assignment is a gift to The Julius Rosenwald Fund, for the same purposes and uses as set forth in my original letter of gift to said Fund dated October 31, 1917.

"Dated March 1, 1918."

"To the Board of Trustees of The Julius Rosenwald Fund:

"I hereby assign to you all dividends to which I may become entitled, payable henceforth and to and including April 30th, 1923, on all shares of capital stock, preferred and common, of the following named corporations:

Continental Can Company
Ederheiner, Stein Co.
Brown Shoe Company
National Cloak & Suit Co.
Kabo Corset Company
Consumers Company
National Union Fire Insurance Co.
Westinghouse Air Brake Company
Independent Pneumatic Tool Company
F. W. Woolworth Company
Columbia Graphophone Manufacturing Co.
American Graphophone Company
Greencbaum Sons Bank & Trust Co.
Hermann, Aukan & Co.
Liberty Trust & Savings Bank.

"Also all rents henceforth and to and including April 30th, 1923, payable to me under lease to Troy Laundry Machinery Company for premises leased by me to said Company in Chicago, Illinois; also all interest payments payable to me henceforth and to and including April 30th, 1923, on bonds or notes secured by mortgages or trust deeds in nature of mortgages executed by the following:

North Chicago Hebrew Congregation
City Club
Lake Shore Country Club
Union League Club
Ravislow Country Club
Idlewild Country Club
New Illinois Athletic Club
Alabama Penny Prudential Trust & Savings Bank Co.
Chicago Tennis Club

"This assignment is a gift to The Julius Rosenwald Fund, for the same purposes and uses as set forth in my original letter of gift to said Fund dated October 31st, 1917.

"Dated, April 23rd, 1918."

There is evidence that petitioner clipped and delivered to the fund, before their maturity, interest coupons from Third Liberty Loan bonds.

The gifts were accepted. Petitioner immediately notified the persons and corporations issuing the notes, bonds, and stocks of the assignments of the income from the securities issued by them, and all promised to comply with the request to pay the income to the fund. The notification to Gimbel Bros. as to the assignment of dividends on stocks owned by petitioner was in accordance with the letter of assignment of March 1, 1918, supra, but the notifications to the other corporations were not in the terms of the assignment of April 23, 1918, but were notices of assignments of "all *cash* dividends," etc. (Italics ours.)

All of the property, the income from which was assigned, was kept by petitioner and mingled with a large amount of like securities belonging to him, after the gifts, the same as before. There was nothing about the stocks, etc., the income from which was the subject of the gifts, either in their treatment or handling, to call attention to the fact that the income had been assigned. The office of the fund was petitioner's private office. Without the knowledge or consent of the other trustees, and, as stated by petitioner, without any thought that he was disposing of the securities from which the income had been assigned, petitioner, during the years 1919, 1920, and 1921, sold and transferred large blocks of securities, the income from all of which had been assigned, and the purchasers thereof were given no notice, and had no knowledge of the assignments. Thereafter no claim to dividends accruing subsequent to the sales was made by the fund, and petitioner in no way compensated the fund for such loss.

Petitioner's books were kept on the cash receipts and disbursements basis.

The facts here show that the incomes assigned were at all times as wholly within the control of petitioner as though the assignments had not been made. The descriptions of the securities from which the incomes were to arise are meager and indefinite, and it seems probable that the assignments are so broad that they would have to be construed as covering incomes from stocks and bonds acquired by petitioner at any time within five years after the assignments.

The question is, not whether the assign-

ments as between petitioner and the fund are good, but it is whether the assignments are sufficient to defeat the government in the collection of taxes that admittedly would have been due had the assignments not been made. If such indefinite transactions are approved, it will open wide the door by which men, without the high purposes that the government admits. actuated petitioner, may enter and defraud the government of its taxes.

The ultimate question here is, Did petitioner so divest himself of the income from the securities mentioned that it never became taxable income as against him?

█ Petitioner's chief contention is that there was a completed gift, and that petitioner never received the income.

It is doubtful whether a holder of securities may separate the income thereafter to accrue from the principal, and make a gift by way of assignment of the income, without assigning or trusteeing the thing out of which the income arises, where the effect would be to relieve the donor from a tax he would otherwise be required to pay. We hold, however, that the delivery to the fund of the negotiable Third Liberty Loan bond coupons, before their maturity, made a completed gift, and that the coupons are not taxable as income as against petitioner.

In U. S. v. Mellon (D. C.) 279 F. 910 (affirmed (C. C. A.) 281 F. 645) and U. S. v. Davison (D. C.) 1 F.(2d) 465, relied on by petitioner, we find no support for the proposition that "income validly assigned as a gift in advance of its accrual or receipt is not taxable income to the assignor." And Bowers v. N. Y. Trust Co. (C. C. A.) 9 F.(2d) 548, is not in point, because it was there held that the income in question was not, under the original arrangement, income of the partnership.

█ As to the stocks, there could not be dividends to anybody until declared. As to the other securities, it does not appear that there was anything representing the rent or interest thereafter to accrue, other than the general provisions of the instruments themselves. Nothing was delivered upon the execution of the assignments. The notice from petitioner to the various corporations was to pay money as the interest or dividends became payable by the terms of the several securities. The acknowledgments of those notices were to petitioner personally, and not to the fund. There was not a novation.

The situation here is far different from the Illinois cases relied upon by petitioner. In Harris v. Harris, 222 Ill. App. 164, the assignment was not of income, but was of household goods in the home of the assignee and shares of stock, the certificates for which were held by a bank as security for a loan. They could not be delivered, but in the assignment was a power of attorney, authorizing assignee to have the shares transferred on the books of the corporation. The assignment was signed, acknowledged, delivered, and recorded. It seems to have complied with the Illinois statute of frauds, viz.:

"Every conveyance of goods and chattels on consideration not deemed valuable in law shall be taken to be fraudulent, unless the same be by will duly proved and recorded, or by deed in writing duly acknowledged or proved and recorded as in the case of deeds of real estate, or unless possession shall really and bona fide remain with the donee." 4 Callaghan's Ill. Stats. Ann. p. 3940.

If the law of Illinois controls, as is urged by petitioner, then the assignments failed because he attempted the transfer, without consideration, of a thing not in existence. Of course, a thing not in existence could not be delivered, unless it might be on the theory hereinafter considered that it was a conveyance of an interest in the principal.

Barnes v. Banks, 223 Ill. 352, 79 N. E. 117, 8 L. R. A. (N. S.) 1037, 114 Am. St. Rep. 331, relied on by petitioner, is not in point. There the gift was of real estate by letter, and it was held to be good in equity because the donee was *in possession*. It must be remembered that here the securities all remained in the hands of the donor, and were either negotiable securities or such as usually pass for the purposes of sale or as collateral by indorsement and delivery. Regardless of the assignments, the notices and the acknowledgments to petitioner of the receipt of the notices, petitioner could have transferred every security, as he did many of them, freed from the assignments, and, if he had done so, without notice to the purchasers of the assignments, the income could not have been reached in their hands, nor as against them, by any action, in equity or otherwise, on behalf of the fund.

In People v. Csontos, 275 Ill. 402, 406, 114 N. E. 123, 124, the Supreme Court said:

"It is essential to such a gift that it be absolute and irrevocable; that the giver part with all present and future dominion over the property given; that the gift go into effect at once and not at some future time; that there be a delivery of the thing given to the donee, and that there be such a change of possession as to put it out of the power of the giver to re-possess himself of the thing

given. Telford v. Patton, 144 Ill. 611 [33 N. E. 1119]; Williams v. Chamberlain, 165 Ill. 210 [46 N. E. 250]."

See, also, Basket v. Hassell, 107 U. S. 602, 614, 2 S. Ct. 415, 27 L. Ed. 500; Wright v. Bragg, 106 F. 25, 32 (7th C. C. A.); Chambers v. McCreery, 106 F. 364, 368 (4th C. C. A.); Allen-West Commission Co. v. Grumbles, 129 F. 287, 294, 295 (8th C. C. A.); So. Industrial Inst. v. Marsh, 15 F. (2d) 347, 349 (5th C. C. A.); Lee v. Lee, 55 App. D. C. 344, 5 F.(2d) 767, 768.

In Irwin v. Gavit, 268 U. S. 161, 45 S. Ct. 475, 69 L. Ed. 897, much relied on by petitioner, we see nothing that is relevant, unless it be that language of the court wherein it is said "if it were material a gift of the income of a fund ordinarily is treated by equity as creating an interest in the fund." If, in the instant case, it must be said that what petitioner did was to give the principal and income therefrom for a period of five years, then, clearly, it seems to us that, as the principal was represented by the stock certificates, the Gimbel note, the lease, and the bonds, there was no reason why the things assigned could not have been delivered. They could have been delivered to the fund or to a trustee to be held for five years for the purposes of the assignment.

The order of the Board of Tax Appeals is, as to the coupons from the Third Liberty Loan bonds, reversed, and, as to all other matters, it is affirmed.