## WASHINGTON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 38.

Circuit Court of Appeals, Second Circuit

Jan. 6, 1936.

MANTON, Circuit Judge, dissenting.

———◆———

Bernhard Knollenberg, Harry J. Rudick, and Joseph W. Wyatt, all of New York City (Lord, Day & Lord, of New York City, of counsel), for taxpayer.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, and Joseph M. Jones, Sp. Assts. to the Atty. Gen., for respondent.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The petitioner is the inventor of a process for making desiccated soluble products of coffee and other substances. In 1910, desiring to keep his process secret while manufacturing and selling its product on a commercial scale, he organized a New York corporation called G. Washington Coffee Refining Company, and made an arrangement with it to supply him with the materials which he needed to exploit his process himself and to sell the product he made. He was to receive for what he did an agreed amount based upon the quantity of the product with which he provided the corporation and which was sold by it. This was called a royalty. It will be convenient to speak of his income from this arrangement as his royalty. When the corporation was organized, it had common stock of the par value of

$500,000 and preferred stock of $100,000 in par value.

The petitioner became president of the corporation and owned all of the preferred and $300,000 of the common stock. Capital necessary for operation was obtained for the corporation by selling the remainder of the common stock to the public largely, if not wholly, through the efforts of a friend, Mr. Arkell, who will be mentioned later in connection with one of the questions raised. The business was successful. In 1918 petitioner made a contract with the corporation in terms much like the previous arrangements he had had with it, but providing for monthly payments of royalty to him for furnishing it the product of his process. He had previously been paying Mr. Arkell, in appreciation of his former assistance, an agreed amount per unit of product out of the royalties he received. Arkell had been connected with the corporation, but these payments had not been for his current services. In 1918 Arkell retired, and, instead of paying him as before, it was agreed that petitioner would pay him $2,000 a month so long as Arkell lived. Having so arranged his affairs, the petitioner wrote a letter on December 30, 1918, to his wife and three children, the youngest of whom was then twenty years old, which read as follows:

"To my dear wife, Lina, to my dear children, Louise, Irene and George:

"Pursuant to our conversations on the subject, in consideration of the devoted care and valuable assistance you have given me, in the past, and other valuable consideration, I, hereby, sell and assign to each of you a one-fifth interest in all my real and personal property, except my shares of the Capital Stock of the G. Washington Coffee Refining Company of New York, but, including the contract I have with said Company by virtue of which they pay me a royalty. However, in view of your inexperience in business matters, I want it distinctly understood that I reserve, for myself, the exclusive right to alter or modify said contract, as well as the amount of royalties payable thereunder, from time to time, as in my judgment may best serve the interests of the business.

"Providing, first: That any financial obligations I now have shall be liquidated out of the herewith assigned assets to the extent of one-fifth by each of you; the balance to be used absolutely.

"Secondly: That while we live together and as long as we do so, we shall each equally share in the general expense of doing so.

"For your convenience, I will inform the company of your interest in my contract and authorize them to pay to each of you, directly, your share of the Royalties upon your request to them to do so.

"Realizing that this may not be the best form of an Assignment I will, in the near future, cause a formal document to be prepared and executed.

"Lovingly yours,
"[Signed]   G. Washington."

The corporation was notified of the letter, and on March 3, 1919, the petitioner followed out his intention so expressed by executing four formal assignments of "an undivided one-fifth part or share of all my right, title and interest in and to any and all royalties or other sums of money which may at any time hereafter become due and payable to me" from the corporation under his royalty agreement. One of these assignments, none of which covered anything but a one-fifth interest in his royalties to become due, was delivered to his wife and one to each of his children. All of the assignments were made upon the express condition, to which the assignee by acceptance assented, that the petitioner's royalty contract with the corporation might be "cancelled, waived, or modified in any respect whatsoever, at any time and from time to time" as he and the corporation might agree.

During the years 1925, 1926, and 1927 the petitioner returned only one-fifth of the royalty as his own income, treating the remainder as that of his wife and children. The deficiencies in controversy were determined by the Commissioner and sustained by the Board upon the ground that it was all taxable to him. In those years the petitioner and his wife and children together owned all of the common stock of the corporation and he owned all of its preferred.

The practice from 1918 to 1925 had been to deposit all of his royalty payments in what was called a "trustee account" in a bank of New York. By checks drawn on that account he paid the family living expenses, for the repairs of his town and country houses, the amounts due Mr. Ar-

kell under the agreement with him, and used it also to pay other expenses as he would from his own personal account, making distributions from it to his wife and children in a manner satisfactory to all concerned. During the three years involved there may have been some change in the method of making withdrawals from the trustee account, but, if so, that was left to mere surmise, with no proof whatever to show what it was. In this respect it was correctly stated in the opinion of the Board that: "Most of the evidence had reference to years prior to 1925, but the situation created and existing before that year was not shown by petitioner, on whom the burden rested, to have been changed at any time before or during the taxable years."

■ So far as the formal assignments are concerned, it is to be observed that, as they were nothing more than the assignment of the future income of the petitioner as it became due and payable to him under a contract requiring his continuing performance to make them payable, they did not relieve him from liability to pay an income tax upon it, even though the wife and children each became entitled to one-fifth as soon as it was due the petitioner. Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Burnet v. Leininger, 285 U.S. 136, 52 S.Ct. 345, 76 L.Ed. 665. But we shall assume for present purposes that his letter, followed by what was done pursuant to it, did transfer to the wife and children an interest in the royalty contract itself which was enforceable in equity at least. And we will assume arguendo that the property right so created was the producing source of whatever income the wife and children might thereafter be entitled to receive, a proposition essential to such decisions as Hall v. Burnet, 60 App.D.C. 332, 54 F.(2d) 443, 83 A.L.R. 86; Commissioner v. Field (C.C.A.) 42 F.(2d) 820; Nelson v. Ferguson (C.C.A.) 56 F.(2d) 121. Nevertheless the letter contained limitations upon the right of the wife and children which cannot be ignored. Only the one which provided that they should take subject to liability for four-fifths of the petitioner's then existing financial obligations need now be mentioned, for that is enough to require affirmance. We do not know the extent of those financial obligations. They might still have been in existence during the years involved in such amounts that the petitioner could have required all of the royalty income to be applied to their payment. We know only that he did not in fact insist upon such an application as to all of the income, but the right is alone important; the nonexercise of it having no effect upon the taxability of income he might have used as his own. Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916; Mitchel v. Bowers (C.C.A.) 15 F.(2d) 287; Dickey v. Burnet (C.C.A.) 56 F.(2d) 917; Rosenwald v. Commissioner (C.C.A.) 33 F.(2d) 423.

■ The second point relates to the right of the petitioner to deduct the payments made Arkell on the ground that they were the payment of ordinary and necessary business expenses. It seems clear enough that they were but personal expenses the petitioner incurred and paid out of gratitude to Arkell for his previous assistance. The petitioner testified that what he paid Arkell from the first was just the voluntary expression of appreciation, and, when asked if the later modification of that gift to the sum of $24,000 a year was a continuation of that voluntary expression of appreciation, testified that it was. Being nothing more than one of the ways the petitioner chose to spend his own income without closer relationship to the carrying on of any trade or business than that he had a praiseworthy sense of obligation to an old business associate, the payments do not fit into the deduction statute. And so they were properly disallowed. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348.

Affirmed.

MANTON, Circuit Judge (dissenting).

Under a license agreement between the petitioner and the G. Washington Coffee Refining Company, the corporation was licensed to use his secret process for the manufacture of powdered coffee, and in consideration therefor agreed to pay to the petitioner a fixed royalty payable monthly, based upon net receipts from the sale of the product. By the letter quoted in the majority opinion, petitioner assigned to his wife and three children a one-fifth interest each in this royalty contract with the company.

Because of certain facts considered below, the Board of Tax Appeals held that the petitioner had set up a trust, reserving power to so modify and change the corpus of the trust that it might be revested in himself, and consequently that the income

of the trust was taxable to the settlor within section 219 (g) of the Revenue Acts of 1924 and 1926, 26 U.S.C.A. § 166 and note.

The majority opinion relies on the settlor's reservation of a power to apply the royalties, notwithstanding the assignment, to the discharge of four-fifths of the financial obligations of the settlor existing at the date of assignment—1918.

Upon neither of these theories is it possible to sustain the Commissioner in taxing to the petitioner the entire amount of these royalty payments made in 1925, 1926, and 1927. In Nelson v. Ferguson, 56 F.(2d) 121 (C.C.A.3), certiorari denied 286 U.S. 565, 52 S.Ct. 646, 76 L.Ed. 1297, the petitioner had assigned a patent to a corporation in consideration of the corporation's agreement to pay him a third of all the profits received by the corporation from its use in manufacturing a patented article. As a gift, the petitioner transferred all his rights under this contract to his wife, and thereafter the corporation paid her a third of all the profits. The court held that the petitioner under his contract with the corporation had certain vested property rights, and that these had been effectively transferred to the wife. The transaction was not merely an anticipatory transfer of income when earned, although from the property assigned profits and income were expected to flow. The income was not taxable to the assignor, the petitioner, but was properly returned as the income of his wife, the assignee. This principle, that, where there is a present transfer of property, the income thereafter accruing is taxable to the assignee and not the assignor, is established in Lowery v. Helvering, 70 F.(2d) 713 (C.C.A.2); Hall v. Burnet, 60 App. D.C. 332, 54 F.(2d) 443, 83 A.L.R. 86, certiorari denied 285 U.S. 552, 52 S.Ct. 408, 76 L.Ed. 942; Com'r v. Field, 42 F.(2d) 820 (C.C.A.2), and Copland v. Com'r, 41 F.(2d) 501 (C.C.A.7).

In the instant case, the petitioner had a vested property right to royalty payments by reason of his contract with the corporation. He effectively assigned four-fifths of these property rights, and the income therefrom should be taxed to the assignees, his wife and children, not to him. The doubt cast upon this conclusion arises by reason of certain reservations in the assignment. If these reservations can be read as reserving the disposition of the income within the petitioner's power, it is properly taxable to him. If he can divert the income, it is taxable to him whether or not he exercises his option of diverting it, for the income is still within his control. Mitchel v. Bowers, 15 F.(2d) 287 (C.C.A.2), certiorari denied 273 U.S. 759, 47 S.Ct. 473, 71 L.Ed. 877; Rosenwald v. Com'r, 33 F.(2d) 423 (C.C.A. 7), certiorari denied Rosenwald v. Lucas, 280 U.S. 599, 50 S.Ct. 69, 74 L.Ed. 644; Dickey v. Burnet, 56 F.(2d) 917 (C.C.A. 8), certiorari denied 287 U.S. 606, 53 S.Ct. 10, 77 L.Ed. 527. And see Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 337, 74 L.Ed. 916, where the court said:

"If a man disposes of a fund in such a way that another is allowed to enjoy the income which it is in the power of the first to appropriate it does not matter whether the permission is given by assent or by failure to express dissent. The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not."

The assignment to the petitioner's family provided that any financial obligations the settlor had in 1918 should "be liquidated out of the herewith assigned assets to the extent of one-fifth by each of you, the balance to be yours absolutely." This paragraph the prevailing opinion relies on to make the income of 1925, 1926, and 1927 taxable to the petitioner. There is no showing in the record what these debts were, and nothing was brought out to show that any debts remained outstanding during the years in question, except the monthly payments to Arkell. The petitioner concedes that so far as his debts were paid there was income realized by and taxable to him. This is as far as he should be compelled to go. It is not his burden to prove that no other debts were outstanding to which the benefits of the assignment might be subject. The Commissioner is attacking the assignment, and it should not be held invalid any further than justified by the proof he offered. The payment of the settlor's obligations would be income realized to him when the payment was made. Although the assignment would be regarded as invalid for tax purposes as far as the payments to the assignees could be subject to these debts, whether or not they were so applied, the provision cannot be considered the

equivalent of a general power of disposition reserved in the assignor. Even if it be considered that a trust was set up here, section 219 (g) of the Revenue Act restricts the income taxable to the settlor only to that derived from that part of the corpus which the grantor has power to revest in himself during the taxable year. Though we read this broadly enough to cover the present case, it gives no authority for taxing the entire income during 1925, 1926, and 1927 to the petitioner.

Another provision of the letter states: "However, in view of your inexperience in business matters, I want it distinctly understood that I reserve, for myself, the exclusive right to alter or modify said contract, as well as the amount of royalties payable thereunder, from time to time, as in my judgment may best serve the interest of the business."

This refers to the petitioner's royalty contract with the corporation. Since the petitioner owned stock of the corporation, it is argued that this power to reduce the amount of royalties due from the corporation would correspondingly increase his income through dividends on the corporation stock which he held. Dickey v. Burnet, 56 F.(2d) 917 (C.C.A.8), is advanced as authority against petitioner. In that case a father sold clay beds to a corporation which he owned, and the corporation agreed to pay two-thirds of the income from these clay beds to his wife and children. The father had fifteen plants dependent upon these clay beds for their raw material. He contracted with the corporation to buy clay from it at $1 a ton. It was developed that the purchase contract between the father and the company was "subject to termination by mutual assent which would be readily forthcoming," since he owned all the stock of the corporation selling the clay. Thus the father could have contracted to pay any price he pleased for the clay. This, of course, would have caused the income payable to the wife and children to vary. It was held that the petitioner had not in fact relinquished control over the income and that it was still taxable to him. The difference in that case and the instant case is that here the power he retained to control the royalty contract was not complete. The quoted language, "in view of your inexperience in business matters, I want it distinctly understood that I reserve," etc., would not empower the petitioner to promote his own interest at the aassignees' expense. His, the only, testimony offered, was that the purpose of this reservation was to leave room for a readjustment of the corporation's royalty obligations if new financing, which might require such readjustment, should be found necessary. The power given seems to be no broader than this. More comprehensive language has been restricted in New York. Cf. Carrier v. Carrier, 226 N.Y. 114, 123 N.E. 135. There, the settlor of a trust for the welfare of his daughters had reserved an absolute and uncontrolled discretion in investing the corpus of the trust. After the family had parted, the father wanted to use the fund in a speculative venture. The court restricted him, holding that the language did not empower him to further his own interest at the beneficiaries' expense. The provisions in the present case should be similarly limited. This would not, therefore, reserve to the petitioner here complete dominion over the income to the assignees.

The provision in the letter of assignment that the general expense of living together should be shared does not make the entire royalty income taxable to the petitioner. During the years in question the children were all over 21; petitioner had no duty to support them, and their payment of their share of the living expenses was not a discharge of the father's obligation. There was a duty to support his wife. A proper finding of the amount by which the petitioner's duty of support was discharged by these agreed payments would support a tax upon this amount as income to him. However, no finding was made, and, for all that is shown, the wife may have been completely independent financially or provided for by other means.

As far as the payments made toward the general upkeep of the petitioner's house inure to his benefit, he can be taxed as upon realized income. It appears that the petitioner desired by the letter of assignment to give his wife and children each a one-fifth interest in the residence. As the letter was ineffective to transfer any real property, petitioner made the provision by deed about a year after the letter. The expenses on the realty assumed by his family in that interval would be taxable to him, but that is no reason for levying a tax in 1925, 1926, and 1927 when the property was no longer owned by the petitioner.

The payments to Arkell of $2,000 per month were not shown to be reasonable business expenses. The taxpayer has the burden of proving that he came within the statute allowing the deduction. See New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348. There is nothing to force a reversal of the Commissioner's assessment as to these payments.

The petitioner should be taxed only on one-fifth of the income from the royalty contract with the corporation and on the amounts paid yearly to Arkell.

The order should be reversed and remanded.