ABRAM ASHELFORD

*v.*

ROBERT WILLIS.

*Opinion filed February 21, 1902.*

1. EQUITY—*one seeking the aid of equity subjects himself to equitable rules.* One applying for an injunction to restrain a trespass to land by one whom the record shows to be solvent, subjects himself to all the rules of equity applicable to the parties and the property as disclosed by the circumstances of the case.

2. REAL PROPERTY—*in equity a good title may be conveyed without any writing whatever.* While at law a conveyance of land, or any interest therein, must be by deed having a seal and attended with certain formalities, yet in equity a good and indefeasible title may be conveyed without any writing whatever.

3. SAME—*equity will recognize executed parol contracts concerning land.* Contracts not under seal, and even contracts not in writing, affecting an interest in land, are recognized in equity if they have been so far performed that to permit a party to repudiate them would of itself be a fraud.

4. SAME—*when grant of right of way by contract not under seal will be upheld.* A grant of a right of way by a contract not under seal will be upheld by a court of equity in a suit by the purchaser of the servient estate to enjoin the use of such right of way, where the contract was made for sufficient consideration by the then owner of the servient estate, and the strip of land granted was fenced off by the grantee of the right of way and in his exclusive possession and control at the time the complainant in the bill purchased the land.

APPEAL from the Circuit Court of DeKalb county; the Hon. CHARLES A. BISHOP, Judge, presiding.

This was a bill filed by appellant, Abram Ashelford, against appellee, Robert Willis, on the 17th day of September, 1900, in the DeKalb county circuit court, praying for an injunction against appellee to restrain him from removing certain fences of appellant, and from breaking and entering or in any way interfering with the possession of appellant over, across and upon the north-east quarter of section 25, township 41, north, range 3, east of the third principal meridian. In his bill appellant

represents that he purchased the above quarter section of land from James and Honora Quinn on the 2d day of May, 1900, which was on that date conveyed to him by ordinary statutory warranty deed; that he immediately went into possession thereof and has remained in possession ever since; that after he went into possession he attempted to repair his fence upon the west line of said tract, and while doing so was assaulted by appellee and his servants; that he then learned of some sort of agreement existing between appellee and James Quinn, former owner of the land, and upon going to the records he found the following:

"*James  Quinn*
       *to*          } Grant of right of way.
*Robert  Willis.*

"I, James Quinn, of the city of DeKalb and county of DeKalb and State of Illinois, hereby grant to Robert Willis a right of way or easement over and upon and across a strip of land sixteen feet wide, across the north-west corner of land now owned by undersigned in township of South Grove, Illinois, and said right of way leading from the land now owned and occupied by Robert Willis to connect with the land this day purchased of William H. Quinn by the said Robert Willis, the said road to be used only as a private road to connect his, Robert Willis,' homestead with the farm purchased this day, November 28, 1892, of William H. Quinn.          JAMES QUINN."

That, construing said instrument as a license or permit executed by said James Quinn to appellee, appellant, on the 24th day of May, 1900, served a written notice upon appellee rescinding and canceling all his rights under and by virtue of the above writing; that said appellee, notwithstanding said notice, continued to trespass upon the lands of appellant and to tear down and cut to pieces appellant's fences, and continued to go over appellant's lands with teams and otherwise, and threatened to continue such repeated trespasses regardless of the rights of appellant; that upon information and belief the instrument above set forth from James Quinn to appellee was

made without consideration; that said appellee has no right or title or color of title to said premises or any part of them, and that his acts and doings are unlawful; "further represents that said destruction of your orator's fences and unlawful entry upon your orator's said lands by said Robert Willis constitutes a great and lasting and irreparable injury and damage to your orator, and which continued entry upon your orator's said lands, if permitted to continue, will ripen into a right of way or easement across the lands of your orator in favor of said Robert Willis, unless restrained by order and injunction of this honorable court;" and prays for a perpetual injunction and further relief.

To this bill appellee answered, admitting the purchase by appellant of the land as alleged in the bill and that appellant's deed was duly recorded, and further answering, states that he is the owner of the east half of the east half of section 23 and the north-west quarter of section 25, and that the south half of the south-east quarter of section 24, all in the same town and range, is the land of appellee; that in November, 1892, appellee purchased the south half of the south-east quarter of section 24, in the same town and range, from one William Quinn; that said William Quinn was a son of James Quinn, the grantor of appellant; that at the time of the purchase of said eighty acres from William Quinn, James Quinn was interested in having appellee make such purchase and took part in the negotiations between appellee and said William Quinn for such purchase; that appellee, at the time of the proposed purchase, represented to William Quinn and James Quinn that he would not become the purchaser of said eighty-acre tract unless he could obtain a right of way across the north-west corner of the tract then owned by James Quinn and now owned by appellant, so that appellee could pass from the north-west quarter of section 25 to the eighty-acre tract he proposed to purchase, which two tracts cornered together, and that

it was thereupon agreed between William Quinn and James Quinn and appellee, as a part of the transaction of the purchase by appellee of the William Quinn land, that James Quinn should grant appellee a right of way or easement sixteen feet wide across the north-west corner of said north-east quarter of section 25; that the said agreement was consummated, and the writing set forth in the bill, purporting to be a grant of easement by James Quinn to appellee, and the deed from William Quinn to appellee, were executed and delivered at the same time and as a part of the same transaction, and that appellee paid to James Quinn five dollars for the right of way or easement mentioned in the writing obtained from him, and that appellee, immediately after receiving the deed from William Quinn and the writing from James Quinn, went upon the north-west corner of said north-east quarter and measured each way from the post at the corner sixteen feet, and then moved the fence of James Quinn in an easterly direction, so that it left an open passageway of sixteen feet from the land purchased of William Quinn to appellee's north-west quarter of the same section; that appellee then entered into the free and full enjoyment of said right of way, with the free consent and knowledge of James Quinn, the then owner of the said north-east quarter, and that the land occupied by said right of way is two hundred and fifty-six square feet; that said land has no special value to any one except appellee, and no value to appellant except as a part of his farm; that the entire farm was not worth to exceed $65 per acre; that appellant's improvements on the farm are at the south side and near the south-east corner, and most removed from said right of way of appellee; that appellant purchased the land with notice of the use and occupancy by appellee of said triangular tract as and for such right of way; admits that appellant attempted to close up and obstruct the said right of way and that appellee forcibly prevented him from doing so; admits that he was served

with notice by appellant and that he disregarded the notice and continued to use the strip for a passageway, and that he removed the fence placed there by appellant; denies that appellant has ever had possession of said triangular piece of land, and denies that appellee's possession of it is any injury to appellant or that appellant is entitled to any relief. Appellee also filed a cross-bill, in which he stated the same matters that are set up in his answer somewhat more fully than in the answer, and prayed that his rights might be fixed and determined by the court and appellant restrained from further interfering with him.

Appellant answered the cross-bill, and replications to the bill and cross-bill were filed, and the cause was heard by the chancellor on the 17th day of January, 1901. The chancellor dismissed both the bill and cross-bill for want of equity. Appellant excepted to the order dismissing his bill and prayed this appeal, and assigns as error, first, the court erred in dismissing the bill; second, the court erred in not granting a perpetual injunction; and third, the court erred in rendering a decree against complainant in manner and form as rendered.

JONES & ROGERS, for appellant:

A grant of real property is a conveyance by deed. 9 Am. & Eng. Ency. of Law, (1st ed.) 44.

A deed of conveyance is a sealed writing signed by the party to be charged, which evidences the terms of a contract between parties whereby the title to real property is transferred from one to the other *inter vivos*. *Jackson* v. *Wood*, 12 Johns. 73; *Jackson* v. *Wendell*, id. 355; 9 Am. & Eng. Ency. of Law, (2d ed.) 90, 91; 5 id. (1st ed.) 423; 2 Blackstone's Com. 297, 312.

An easement is an incorporeal hereditament, and can pass only by deed. 10 Am. & Eng. Ency. of Law, (2d ed.) 410, note 1, and authorities cited; *Tinker* v. *Forbes*, 136 Ill. 221; *Village of Dwight* v. *Hayes*, 150 id. 281; *Wessels* v. *Cole-*

*bank*, 174 id. 622; *Forbes* v. *Balenseifer*, 74 id. 183; *Railroad Co.* v. *Whitham*, 155 id. 514; Washburn on Easements, 267; *Oswald* v. *Wolf*, 126 Ill. 548.

An easement can be created only by a conveyance under seal, or by long user, from which such conveyance is presumed. *Cagle* v. *Parker*, 97 N. C. 271; *Hammond* v. *Schiff*, 100 id. 161; 10 Am. & Eng. Ency. of Law, (2d ed.) 410, note.

An unrecorded writing without a seal, witness or acknowledgment, by which a land owner guarantees another a free passage across his land to a highway, is not binding upon a subsequent grantee of such owner having no other notice of such right of passage than the existence of a mere wagon track across the land over which the guarantee had been in the habit of passing. *Taggart* v. *Warner*, 83 Wis. 1.

CARNES & DUNTON, and THOMAS M. CLIFFE, for appellee:

Contracts not under seal, and even contracts not in writing, affecting or concerning an interest in lands, are recognized in equity if they have been so far performed that to permit the party to repudiate them would of itself be a fraud. *Martin* v. *Martin*, 170 Ill. 639.

Part performance sufficient to bring a case within the above rule may be: First, possession, paying purchase money and making lasting improvements; second, possession and valuable improvements; third, taking possession and paying the purchase money without making valuable improvements. *Morrison* v. *Herrick*, 130 Ill. 631.

Where consideration for land is fully paid and possession given to the purchaser there is a sufficient performance to take the case out of the Statute of Frauds. *Fitzsimmons* v. *Allen*, 39 Ill. 440; *Ramsey* v. *Liston*, 25 id. 114.

Actual possession by the grantee is equivalent, as notice, to the record of title papers. That is the well settled law of this State. *Morrison* v. *Morrison*, 140 Ill. 560.

194—32

Payment of purchase money and delivery of possession under an oral contract are sufficient to work a conveyance of the equitable title to land. *Moore* v. *Flynn*, 135 Ill. 74.

A purchaser in this State takes title subject to whatever interest a party in possession may have in the land. *Coari* v. *Olsen*, 91 Ill. 273, and cases cited.

Possession of an easement is notice to and binding upon a subsequent purchaser of the land upon which the easement is a servitude. *Ingals* v. *Plamondon*, 75 Ill. 118.

Mr. JUSTICE RICKS delivered the opinion of the court:

This is a proceeding by bill for an injunction, brought by appellant to restrain appellee in the enjoyment of a passageway across the north-west corner of appellant's land, and to prevent appellee from tearing down fences and structures put across such passageway by appellant. Upon the matters that are material in this case there is little, if any, conflict in the evidence. It shows that in 1892 appellee was the owner of a large farm near Clare, in DeKalb county. His farm was so situated that he could pass from one tract of it to the other, and comprised nearly five hundred acres. His residence and buildings were at the south-west corner of section 24, township 41, north, range 3, east, and he owned the north-west quarter of section 25, lying immediately south of his residence. William Quinn owned the south half of the south-east quarter of section 24, which lay just a half mile east of appellee's house and cornered with his north-west quarter of section 25. James Quinn, the father of William, owned the north-east quarter of section 25, lying south of and adjoining William's eighty. William was in debt. His land was mortgaged and his father was security for him on certain outstanding notes. They were both anxious to sell William's land to enable William to get out of debt and the father to get off of his notes, and they sought appellee and endeavored to get

him to buy William's land. After some overtures in regard to it and the price was stated, appellee informed William and his father that he would not purchase the land at all unless he could get a right of way sixteen feet wide across the north-west corner of the north-east quarter of section 25, then owned by James, the father. After some parleying and dickering a bargain was struck by which appellee was to buy William's land and was to have a passageway across the corner of his father's land, so that he could pass from the north-west quarter of section 25, already owned by him, to the land he was to buy from William. This was important to appellee, as otherwise, if he should buy William's land, he would be obliged to go south a half mile, then east a mile and then north a half mile before he could reach the tract that he was to buy from William. By arrangement, appellee, William and James Quinn all met at Clare, in a lawyer's office, on the 28th day of November, 1892, where William and his wife made a deed to appellee to the land he was to purchase and James Quinn made and delivered the writing set forth in the statement in this case, by which he granted to appellee "a right of way or easement over and upon and across a strip of land sixteen feet wide, across the north-west corner of land now owned by undersigned in township of South Grove, Illinois, and said right of way leading from the land now owned and occupied by Robert Willis to connect with the land this day purchased of William H. Quinn by the said Robert Willis, the said road to be used only as a private road to connect his, Robert Willis', homestead with the farm purchased this day." Upon the delivery of this writing by James Quinn to appellee, and in further consideration therefor, appellee paid James Quinn five dollars. The land covered by this right of way would be two hundred and fifty-six square feet, and at the rate paid for it would amount to between $700 and $800 an acre. The farm was sold for $65 an acre. Immediately upon getting the deed

from William and this contract from James Quinn, appellee, with the knowledge and consent of James Quinn, measured off the sixteen feet right of way across the corner of the James Quinn tract and moved his fence back so as to form a triangle and make an opening, and thereby fenced the land that he bought from William, and this strip or right of way, and the north-west quarter of section 25, all in one enclosure, and so occupied it until about the time of the filing of this bill. He used it to drive his wagons through and for the passage of agricultural implements, and for his live stock when he desired to pasture them on stalks, and such other ways as related to his farm, from that time on. On the 2d day of May, 1900, appellant bought of James Quinn, through which this right of way passed, the north-east quarter of section 25, and received from him the statutory warranty deed, in which nothing was said about this right of way. He immediately placed his deed of record and took an assignment of certain leases held by James Quinn, whose tenants were in possession of the land. Shortly after purchasing it he met the servants of appellee in the act of passing through this strip and sought to prevent them from doing so. He then attempted to build a fence across this right of way on up to the corner of the section and set some posts for that purpose, and appellee came and cut them down. He then learned that appellee claimed to have some writing concerning this right of way, and went to DeKalb and found that appellee, after appellant had bought the land from James Quinn and had had his deed recorded, had placed this contract of record. Treating this contract from James Quinn as a mere license, appellant served appellee with a written notice that he had canceled his right, title and interest in the north-east quarter of section 25, which he claimed by virtue of the writing from James Quinn, (referring to the book and page where such writing was recorded, and sufficiently describing it to identify it,) and proceeded to

construct his fence on up to the corner and close the right of way, which appellee again cut out. The evidence further shows that at this corner where this right of way was used the ground was originally low and wet, and that appellee and his servants had for a number of years been building and preparing a sort of dike or roadway higher than the general surface of the land, to protect it from water and make it passable in bad weather. There is some evidence tending to show that appellant had actual notice that appellee was using this right of way before he purchased, but we could hardly say that the evidence establishes that fact.

Under this state of facts the question arises as to what interest, if any, appellee had in the strip of land in question. Appellant insists that, inasmuch as the writing from James Quinn was not under seal, it was a mere license, and could not be deemed, in law, to be the granting of an easement or an interest in the land, and that, being a license only, it was revocable at the pleasure of James Quinn, and likewise of appellant, as the grantee of James Quinn of the lands over which it passed. Appellant further contends that as this writing was not recorded prior to the recording of his deed he was a purchaser without notice and was not affected by it, and further insists that the mere sale of the land by James Quinn was a revocation of the license.

As we view this case, the contention of appellant and the matters above mentioned are not controlling. While it may be that an interest in land cannot, at law, be conveyed or granted by an instrument not under seal, and that an easement is such an interest in land as requires a compliance with that requirement to make the grant valid, we do not understand that the same rule that obtains in a common law court, where the legal title must prevail, can be invoked in this court in a chancery proceeding, where equitable relief is sought. When appellant, by his bill, appealed to the chancellor to grant the

extraordinary writ of injunction to prevent what is confessedly no more than a mere trespass to land by one whom the record shows was amply solvent, he thereby subjected himself to all the rules of equity that are applicable to the parties and the property as disclosed by the circumstances of the case. While at law, in order to constitute a valid conveyance of real estate or any interest in land, it must be by deed having a seal and attended with certain formalities, yet in equity a good and indefeasible title may be conveyed without any writing whatever. The rights of the parties depend upon the character and extent of performance and the effect upon the donee by allowing repudiation. Practically all the writers on equity jurisprudence are agreed that contracts not under seal, and even contracts not in writing affecting or concerning an interest in land, are recognized in equity, if they have been so far performed that to permit a party to repudiate them would of itself be a fraud,—and this court is committed to that doctrine. (*Martin* v. *Martin,* 170 Ill. 639; *Morrison* v. *Herrick,* 130 id. 631; *Fitzsimmons* v. *Allen's Admr.* 39 id. 440; *Ramsey* v. *Liston,* 25 id. 114.) Derived from the above authorities, the rule seems to be, that where the contract is fully performed and a valuable consideration paid and possession taken under it, the purchaser or grantee may, in equity, rely upon his title for a defense or enforce specific performance of the contract. Before the Statute of Frauds, by livery of seizin, lands were sold and conveyed without deeds. Afterwards the system of making conveyances in writing was inaugurated and the delivery of the deed took the place of livery of seizin. The Statute of Frauds was designed to avoid the tendency to irregular conveyances and to prevent perjury concerning the titles to lands, but it was never intended to enable anybody to perpetrate a fraud upon another. As has been aptly said by expounders of the law: "But equity will not allow a statute designed to prevent frauds to be made an instrument for commit-

ting them, and it will give relief where a wrongful advantage has been obtained by means of the statute."

It is always admissible, in determining the effect of an instrument or considering its meaning, to look to all the facts and circumstances surrounding the making of it. Taking the circumstances of the making of the writing from James Quinn to appellee into consideration, and the text of the instrument itself, and there is no room for doubt in the mind of the reader as to the intention of the parties. Appellee was about to buy a valuable piece of land that was so related to his other lands that it could not be reached without a long and circuitous route. The elder Quinn was interested in having his son sell his land and was urging upon appellee the purchase of it. Appellee raised the objection to buying land thus related to his farm, and stated that he would not become a purchaser unless that objection was overcome, which could be done by the granting to him of an easement over the corner of the land now owned by appellant. Appellee knew that without the grant of this easement this land must remain, for all practical purposes, separated from his other land in such a manner that two miles travel must be made to reach it, and that he could not, under the statute, by condemnation, secure a private road merely from one tract of land to another. (Hurd's Stat. 1899, chap. 121, sec. 54.) To overcome appellee's objection and to perfect and insure that sale, James Quinn, for that consideration and the further consideration of five dollars in money, and as a part of the transaction between his son William and appellee, made the writing in question. In that it is expressly stated that "a right of way or easement over and upon and across a strip of land," etc., is granted, and with such particularity are the terms and purposes of the grant described that it is certain from the instrument itself that what James Quinn and appellee had in their minds was the granting of an easement over this land, and not a mere license that was revo-

cable at the pleasure of James Quinn or anybody else. If this writing had had a seal, no one will pretend but that appellee had a good and perfect grant of an easement across this strip. In the further light of the facts concerning it, the conclusion is inevitable that this easement was designed to be appurtenant to the north-west quarter of section 25, already owned by appellee, and the tract then being purchased of William Quinn. *Louisville and Nashville Railroad Co.* v. *Koelle,* 104 Ill. 455.

Under the whole evidence there can be no doubt, in our minds, but that the grant of this easement was the moving cause to the purchase of this land from William by appellee. He at once took possession of the strip of land covered by this easement and so enclosed it with his other lands, and so moved the fences of the lands of James Quinn, the grantor of the easement, that his intention to appropriate it absolutely to his own use and as a part of his enlarged farm was entirely manifest. With this use continued from 1892 to 1900,—the time when James Quinn sold to appellant,—we can come to no other rational conclusion than that the use he was making of it was not only justified by the writing, but was within the contemplation of James Quinn, the maker of that writing, and we think that under the rules of equity, whether that writing arose to the dignity of a deed or not, there was sufficient performance of the contract, and acquiescence in it by those who were parties to it, to take the transaction out of the Statute of Frauds in a court of equity. If this writing or grant had been of record when appellant purchased he would have been bound to take notice of it, and with appellee in such open and long continued possession,—the only possession that he or any other grantee of a similar right could have,—appellant was likewise bound to take notice. In other words, he had notice by implication of law. (*Willoughby* v. *Lawrence,* 116 Ill. 11; *Boyer* v. *Chandler,* 160 id. 394; *Coari* v. *Olsen,* 91 id. 273.) When appellant purchased, this strip

of land was fenced in with a part of appellee's farm, and appellant cannot, in equity, be allowed to say that he did not know that appellee had any rights or was in possession, until after his purchase. Whatever interest appellee did have in this strip of land by virtue of his contract with James Quinn, in view of the fact that he was in open possession of it at the time appellant purchased from James Quinn, he was as much entitled to assert against appellant as he would have been had James Quinn been the complainant in this bill. (*Coari* v. *Olsen,* 91 Ill. 273; *Ingals* v. *Plamondon,* 75 id. 118; *Moore* v. *Flynn,* 135 id. 74.) And this is so even though his interest had only been a license, if it should be inequitable to divest him of it. (*Willoughby* v. *Lawrence,* 116 Ill. 11.) We are, however, disposed to hold, as we have said above, that the interest appellee got in this land was an easement, and that it is permanent so long as he shall own the lands requiring the use of that easement.

There only remains the consideration of the question as to whether it would be equitable now to allow appellant to cancel or revoke the right of way of appellee. If this easement should be wrested from appellee it is evident that he would either be obliged to sell the William Quinn tract, or be put to such extraordinary trouble and unusual travel to reach it that there would be such an injury resulting to him as from the peculiar circumstances of the case could scarcely be recompensed in damages. James Quinn received a double consideration for it. If he had only received the five dollars in cash it would have been far in excess of the actual value of the fee to this land covered by this easement; but the use to appellee of that strip, as related to his two tracts of land, which it connected, was the great value to him in the transaction, and it appears to us now to allow appellant to take that right from him would be to enable him to perpetrate upon appellee a legal fraud. Such is not the purpose of a court of equity, and we think the

chancellor was fully warranted in entering a decree dismissing appellant's bill.

It is suggested, however, that by dismissing appellee's cross-bill the chancellor has decided that appellee had no right that he could assert in equity. That question is not before us, except in the argument. No errors were assigned upon that particular order, and we are not called upon to review the action of the court in that matter.

Finding no error in the proceeding, in so far as it relates to appellant, the decree of the circuit court of DeKalb county dismissing appellant's bill is affirmed.

*Decree affirmed.*