(No. 33883.—

LUEMMA HILL, Appellant, *vs.* CURTIS E. BOWEN.—(CLIFFORD W. SCHAEFFER, Exr., *et al.,* Appellees.)

*Opinion filed May 23, 1956.*

528

FRANK W. BYRNS, of Rushville, and GALBRAITH & BAYMILLER, of Peoria, for appellant.

ARNOLD & ARNOLD, of Rushville, and PENICK, WOOLEY-HAN & NIELSON, of Quincy, for Appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Brown County which found that appellant, Luemma Hill, had made a gift of certain real estate to Curtis E. Bowen and dismissed for want of equity her complaint to partition the same. Bowen died subsequent to the filing of the master's report in the cause and it is the executor and devisees under his will, as substituted defendants and counterclaimants, who are the appellees in this court.

The facts which appear in the record show that Bowen was a lodger in the home of appellant's parents at Mt. Sterling, Illinois, and, during 1944 and 1945, was engaged to be married to appellant. Toward the end of 1944 a business called the East End Grocery Store was up for sale and Bowen offered to advance appellant the funds with which to buy it, telling her the loan could be repaid out of the profits. Accordingly Bowen loaned appellant $584 and she purchased the business on January 15, 1945; on December 4, 1945, appellant repaid Bowen $292, but made no further repayment. Thereafter, on January 20, 1947, appellant purchased the real estate on which the store building was located, and constructed a new building thereon, all with monies arising from the operation of the grocery store. Title to the real estate was taken in appellant's name.

For the years 1945 and 1946, appellant accounted for all income from the store in her income tax returns. Likewise, during the years 1945 through 1947, the store was registered in appellant's name for sales tax purposes. Aside from the implications arising from the fact that appellant purchased the business with funds loaned by Bowen, the first evidence appearing in the record as to a partnership was that a partnership income tax return was filed at the beginning of 1948. There was no evidence, however, that

it reported partnership income for the full year of 1947, nor was there an affirmative showing that the partnership was in existence on January 20, 1947, when the real estate was purchased. Subsequent to the beginning of 1948 the parties shared equally in the income and taxes on the business, partnership income tax returns were filed through the year 1953, the store was registered as Bowen and Lucas (appellant's maiden name) for sales tax purposes, and store records were kept on a partnership basis. On April 10, 1951, appellant conveyed to Bowen an undivided one-half interest in and to the real estate upon which the store was located. According to appellant, who was the only person to testify concerning the transaction, the conveyance was made to relieve her from Bowen's constant demands that he be given one half the real estate.

It is to be gathered from the record that the personal relationship of appellant and Bowen became altered at some period after the operation of the store began. In any event, on December 31, 1953, appellant caused a notice to be drawn to the effect that her partnership with Bowen would be dissolved as of January 1, 1954, that she was retiring, and that Bowen would thereafter continue the business. Some 20 to 30 of such notices were sent out to wholesalers with whom the firm did business. Subsequently, on February 18, 1954, appellant married another and left Mt. Sterling on February 25, 1954. She did not talk with Bowen between the time of the wedding and her departure but, on the day last named, caused her sister to deliver the following handwritten message to him:

"CURT—In order to avoid any unpleasant words I am writing this letter to tell you I am going away—I'm sorry to have to tell you this way—It would be so much nicer to talk it over with you— You can tell people whatever reason you wish for my leaving— I appreciate your thoughtfullness and consideration in the last few months but I know that you have been miserable most of the time because of all the running in and out and so forth. The store; this includes stock and fixtures, has been changed over to you. Eugene Rose will explain any details that you do not understand.

He has the records and will tell you what to do. The G.M.C. and Chevrolet are also yours; and the payments on the tin shop. The tin Shop money, car Insurance papers are in the cedar chest. I think you will find everything in order. I certainly hope so The store is all yours—to operate, rent, sell or do as you please.

Good Luck

LUEMMA

Please don't have too many hard feelings I have done what I thot best for everyone. I will be perfectly all right. The Household goods are also yours to do with as you please—I know you will make a success of the store because you have a lot of friends.

The store, car, and cedar chest keys are under the clock on the radio."

Appellant's complaint alleges that Bowen took exclusive possession of the partnership books, assets and real estate on February 19, 1954; however, this is denied by Bowen's answer. The only evidence which tends to show that he did take possession was the testimony of an insurance agent who related that Bowen, on March 25, 1954, requested changes in the name of the insured from appellant and himself, to himself alone, in policies covering business vehicles, stock and equipment, and the building. The latter policy, it appears, was not changed over until June 9, 1954, after this suit was commenced, and in this regard the same witness stated appellant continued to carry insurance on the building after the joint policy had been cancelled. It was also shown that Bowen had paid the 1953 real estate taxes, while this cause was pending.

On April 25, 1954, sixty days after the delivery of the writing set forth above, appellant filed the complaint in this cause praying for the dissolution of the partership and for the partition of the real estate, alleging that she and Bowen owned the said real estate in equal shares. On this appeal appellant has abandoned her claim for a dissolution of the partnership, conceding, as the master and chancellor found, that she had made a valid and irrevocable gift of all business personal property to Bowen. Insofar as partition of the real estate is concerned, Bowen's answer denied all the allegations of the complaint and as alternative affirmative

defenses he alleged: (1) That no partnership agreement had ever existed and that the grocery business, together with its stock, fixtures and real estate, was purchased with his money and was his sole and exclusive property; or (2) That the real estate was partnership property, and therefore personal property, and passed to him by gift as a part of the business personal property. For counterclaim Bowen alleged that appellant had made him a gift of the real estate but, in making it, had failed to comply with the law pertaining to transfers and conveyances, thus causing her intent not to have been fully effectuated according to law. The counterclaim concluded with a prayer that appellant be directed to execute a deed conveying to Bowen the undivided one-half interest in the real estate which had been the subject of her gift. Appellant denied the foregoing allegations and affirmatively pleaded that she neither gave nor intended to give Bowen her interest and that the Statute of Frauds bars him from any right to her interest in the real estate. When testifying as a rebuttal witness appellant stated: "If it might be said that I intended to give him the real estate, I here and now revoke that gift."

The master, who heard the evidence in the cause, found that the grocery business was the sole property of appellant at its inception, that the real estate was purchased with monies arising from the business; that no partnership agreement existed when the real estate was purchased; and that the said real estate was not partnership property or an asset of the partnership. He concluded that the evidence did not sufficiently or satisfactorily establish Bowen's claim to sole ownership, or a right to specific performance, and recommended that appellant's prayer for partition be granted. The chancellor, however, sustained exceptions to the report of the master and made the somewhat inconsistent findings: (1) that Bowen had furnished the purchase price for the real estate and was its sole proprietor, and (2) that appellant intended to and did give Bowen all interest she

had in the said real estate, as a partner or otherwise. Thereafter the chancellor dismissed appellant's complaint for want of equity, granted the prayer of the counterclaim, and directed appellant to execute a deed conveying to appellees the property which had been the subject of her gift. This appeal has followed.

Before proceeding to a consideration of the principal issue presented in this court it is apparent, both from the finding of the chancellor and from appellees' argument in this court, that a complete disposition of the cause necessitates some consideration of the affirmative defenses pleaded by Bowen. Although appellees disavow any theory of a trust, the affirmative defense that Bowen had furnished the purchase price of the real estate and was the sole owner even though title was taken in appellant's name, is, in effect, a claim to a resulting trust in the land by operation of law. (See: *Scanlon* v. *Scanlon*, 6 Ill.2d 224, 229-230; *Bowman* v. *Pettersen*, 410 Ill. 519, 523-524.) It is a principle long established, and reiterated in the cited cases, that the burden of proof is upon the party seeking to establish a resulting trust and that the evidence, to be effective for such purpose, must be clear, convincing and unmistakable. Here Bowen offered not one iota of proof to establish his claim that he had furnished the purchase price for the land. On the other hand, appellant testified without contradiction that she purchased the real estate with monies arising from the operation of the business, and further testified to facts fairly tending to show that the purchase was made at a time when she was the sole proprietor of the business. Clearly, therefore, Bowen did not meet the burden of proof required to sustain his affirmative defense. Lacking clear or convincing support in the record, the finding of the chancellor that the real estate had been purchased with Bowen's money and was his sole property, was erroneous as being manifestly against the weight of the evidence.

We likewise find that the affirmative defense founded

upon the premise that the real estate was partnership property has no clear or convincing support in the record. Again on this issue Bowen neither testified nor offered proof of any nature, either directly or in rebuttal. Appellant, on the other hand, testified that she had purchased the real estate on January 20, 1947, with monies arising from the business and at a time when she was the sole proprietor of that business. The only evidence which tends to suggest that a partnership existed prior to 1948, was appellant's testimony that a partnership income tax return was filed early in 1948 to report the 1947 income of the business. We agree with the master that, in the absence of affirmative proof, such fact is by no means conclusive that a partnership existed on January 20, 1947, when appellant purchased the real estate. Had this been so, we think it reasonable to assume that title would have been taken in the name of the partners. On the state of the record, therefore, it cannot be said with any certainty that the real estate was purchased with partnership funds, or that Bowen sustained his burden of proving that such was the case. We conclude that the master was correct in concluding that appellant and Bowen were, at the time the cause was heard, each the owners of an undivided one-half interest in the real estate, and that such real property was not an asset of the business.

This brings us to the principal issue raised by this appeal, namely, the question of whether, as the chancellor found, appellant made a gift to Bowen of her undivided one-half interest in the real estate by virtue of the letter she caused to be delivered to him. Appellees make no claim that the writing is a deed but contend that it is complete evidence of a valid *inter vivos* gift of real estate, which is irrevocable and which will be recognized and enforced in equity. For appellant it is urged alternately that the terms of the writing do not show a clear intention of appellant to make a gift of the real property, that at best

it merely evidences an incompleted gift that equity will not perfect, and that if the writing be construed as making a gift of the real estate, then such gift, in the absence of a formal conveyance, is revocable.

Appellees' position is almost completely founded upon the case of *Barnes* v. *Banks,* 223 Ill. 352. In that case a father delivered the following writing to his daughter:

"MRS. HALLIE BANKS—I present you on this your 33d birthday with the house and premises now occupied by you, which includes the garden and orchard back of the house and the pasture north of the house, more fully described in my last will, in the forty-acre tract with other lands.

"Very truly your father,
A. G. BARNES."

June 4, 1902.

Two years later, in 1904, the father died testate and by the terms of his will, which had been executed in 1900 prior to the delivery of the instrument above, he devised the 40 acres referred to in trust. with directions that the trustees pay the income therefrom to his daughter Hallie for life, that they permit her to make her home thereon and to farm it, and that, upon her death, it be conveyed to her child or children. The trustees refused to recognize the written instrument as a conveyance and inventoried the property as a part of the estate. At this the daughter filed a bill to construe the instrument and prayed that she be declared the owner in fee of the entire 40 acres as a result thereof. The circuit court of Christian County found that the father intended to and did convey the entire 40 acres to his daughter by the instrument, that the daughter had occupied the premises from that time on, and that she had made valuable and lasting improvements thereon. On appeal, this court construed the instrument as being limited to the particular portions of the 40 acres mentioned, *i.e.,* the house, the orchard and the pasture, and, although it was concluded that the donee had not made lasting and valuable improvements, it was held that the premises described in the written instrument were a gift to the daugh-

ter from her father, that the gift was absolute and irrevocable, and passed title in the premises to the daughter. Appellees argue that the writing or letter in the instant case commands a similar result. We, however, find no compelling similarity either in law or in fact.

Considering first the factual aspects, it is to be noted that the court, in approaching the problem of the *Barnes case*, said, (p. 361) : "The validity of this instrument and the nature and extent of the estate conveyed by it depend upon whether the father of appellee intended it was a gift to her." That the criterion is the same today is demonstrated in the recent case of *In re Estate of Schneider*, 6 Ill.2d 180, 187, where it is said: "To establish a gift, the proof must be clear and convincing, * * * and the burden is upon the alleged donee to establish the existence of a donative intent." In the *Barnes case* the court found the intention of the father to make a gift to his daughter was resolved by several facts and circumstances over and above the language of the letter he had written. Among them was the proof that the father had stated to third persons either that he had given his daughter the place where she lived, or that he was going to deed it to her. The existence of the father's will at the time of the gift was also construed as showing a donative intent, for the court said (p. 360) : "He must have intended to give his daughter some right and interest in the land she had not possessed and enjoyed before, and it must have been an interest or estate different from that given her by the will." Other circumstances commented upon by the court in determining the existence and extent of the gift were: (1) that the father had never attempted to revoke the gift; (2) that the words "I present you * * * with the house and premises" were the equivalent of "I now give you the house and premises," and (3) that the father was the owner of considerable real estate and experienced in conveyances.

Similar proof or circumstances are not found in the

record before us. Appellee's sole evidence of a donative intent is the letter appellant caused to be delivered to Bowen. There are few, if any, extraneous circumstances which could be construed as evidencing an intention to make a gift and, by way of contrast with the *Barnes case* where the father's letter appears to have been a studied effort delivered on the happy occasion of a birthday, the letter of appellant appears to have been hastily contrived at a time of great emotional stress. There are also marked differences in the language of the letters. In the present case there are no terms which compare with the directness of the words "I present you * * * with the house and premises;" neither is there a conclusive or detailed description of the subject of the alleged gift. Appellees contend, however, that a donative intent with regard to the real estate may be derived from four phrases of appellant's letter which, in the order of their appearance, are as follows: (1) "The store; this includes the store and fixtures, has been changed over to you"; (2) "I think you will find everything in order. I certainly hope so"; (3) "The store is all yours—to operate, rent, sell or do as you please"; and (4) "I know you will make a success of the store because you have a lot of friends. The store, car, and cedar chest keys are under the clock on the radio." Whether considered singly or collectively, we do not think such phrases can be considered as clearly and convincingly showing an intention to make a gift of appellant's interest in the real property. In her first use of the word "store" it is manifest appellant had no reference to the real estate for she had done nothing to "change it over" to Bowen. When her previous transactions concerning the purchase of the land and the conveyance of an undivided one-half interest to Bowen are considered, appellant must have known she would have to execute a deed to accomplish a change of ownership. This she did not do. When it is further considered that the evidence shows the parties did not treat

the real estate as partnership property, and that appellant herself once operated the store without owning the real estate, we think her reference to "the store" throughout the letter referred only to the business and its assets, and not to her interest in the real estate.

Appellees argue that the use of the word "rent" in the third phrase, is consistent only with real estate, and say that one could scarcely rent a stock of groceries. As to the latter argument, it can also be observed that one could scarcely "operate" either a stock of groceries or a tract of land; as to the former, the rental of personal property is as commonplace as the rental of real property. The arguments advanced, we believe, serve only to emphasize that the terms employed in appellant's letter do not serve to prove a donative intent with respect to the real estate with the clarity and conviction that is required.

Apart from the shortcomings of appellees' evidence on the question of intention, it is our opinion that no equities have been shown sufficient to take the alleged gift out of the Statute of Frauds. Upon the authority of *Ashelford* v. *Willis,* 194 Ill. 492, the following general statement appears in the *Barnes case* at page 361; "A conveyance of land, to be good at law, must be by deed under seal, but in equity a good title may be conveyed by a writing not under seal, or without any writing whatever." Appellees appear to conclude from such statement that equity will in all instances recognize a conveyance by parol or by an instrument not under seal. Further examination of the *Ashelford case* reveals, however, that the general rule is subject to further qualifications, for the court stated (p. 502): "The rights of the parties depend upon the character and extent of performance and the effect upon the donee by allowing repudiation. Practically all the writers on equity jurisprudence are agreed that contracts not under seal, and even contracts not in writing affecting or concerning an interest in land, are recognized in equity, if they have been so far

performed that to permit a party to repudiate them would of itself be a fraud,—and this court is committed to that doctrine." That these early observations of our court represent the modern view may be gathered from 24 Am. Jur., Gifts, sec. 68, where it is said that in order to take gifts of land orally, or by writing not under seal, out of the Statute of Frauds "possession must be taken in pursuance of the gift, and as a further condition to the consummation of the equitable right and title, the donee must have made improvements of a valuable and permanent character, induced thereto by the promise to give the land." Similar conclusions as to the circumstances under which equity will recognize and enforce a parol gift of land are expressed in 38 C.J.S., Gifts, sec. 57. While it may be inferred from the evidence in this case that Bowen took possession of the real estate, there is a complete lack of proof or showing that he was induced to change his position as a result of the alleged gift, or that he made valuable or lasting improvements in reliance thereon. *Barnes* v. *Banks,* it is true, found a valid and irrevocable gift which passed equitable title even though the donee had not made valuable or lasting improvements or altered her position in any material respect. However, as shown by the court's reliance upon *Eckert* v. *Gridley,* 104 Ill. 306, and *Finucan* v. *Kendig,* 109 Ill. 198, that result was bottomed solely upon the ground that the gift was between a parent and child, and that it was in the nature of a voluntary family settlement. There are no similarities in the facts or circumstances of this case which command a recognition of equitable title in the alleged donee.

Appellant's alleged parol gift of her interest in the land, if indeed one was intended, was, therefore, ineffectual to pass title to the donee, either legal or equitable. Since there are no equitable circumstances which require recognition or enforcement of the alleged gift, it remains a gift of a legal estate capable of legal conveyance and, as such, is

subject to revocation where no conveyance is made. (See: *Wadhams* v. *Gay*, 73 Ill. 415, 431-432; *McCartney* v. *Ridgway*, 160 Ill. 129, 156; *Geer* v. *Goudy*, 174 Ill. 514, 524-525.) Thus even if it could be said that a gift of the real estate was intended, appellant has revoked it by this action.

We hold, therefore, that the proof introduced in the record by Bowen, the alleged donee, established neither a clear and convincing donative intent nor, if such intent could be said to have existed, such facts or circumstances as would entitle him to equitable recognition and enforcement of a parol gift of land. For these reasons the decree of the circuit court of Brown County is reversed and the cause is remanded to that court with directions to enter a decree of partition in accordance with the prayer of appellant's complaint.

*Reversed and remanded, with directions.*