**Byrta CARSON, Appellant,**

v.

**Bill M. WHITE et al., Appellees.**

**No. 14817.**

Court of Civil Appeals of Texas, San Antonio.

May 27, 1970.

Rehearing Denied July 1, 1970.

Guy Bonham, James R. Warncke, San Antonio, for appellant.

Bruce Robertson, Jr., J. B. Langham, San Antonio, for appellees.

On Motion for Rehearing

KLINGEMAN, Justice.

Our opinion of January 28, 1970, is withdrawn and the following is substituted.

Suit brought by appellees, Bill M. White and Carolyn Sue Sansom, seeking to impress a trust on certain real estate owned by appellant, Byrta Carson. Upon a trial before a jury, the jury found that $3,500.00 in funds belonging to John Marvin White, deceased, the father of appellees, was used by appellant for purchase of the real property in question. Judgment was entered by the trial court for appellees granting to them an undivided $\frac{3,500}{44,525}$ interest in and to the real property involved an all permanent improvements thereon.

Appellant asserts twelve points of error. She complains that the trial court erred in failing to grant her motion for judgment notwithstanding the verdict, because the undisputed evidence requires as a matter of law that appellant receive a take-nothing judgment; that there is no evidence to support the jury's finding that $3,500.00 of funds belonging to John Marvin White were used in the purchase of the real property in question; that there is insufficient evidence to support such finding; and that such finding is against the great weight and preponderance of the evidence. She also contends that there is no evidence of any agreement or understanding between appellant and White that White should receive any beneficial interest in the real property in question. She further asserts that the court erred in refusing to submit certain special issues requested by appellant.

Although appellees plead an express trust, a constructive trust, and a resulting trust, they here concede that the judgment can be sustained only upon the basis of a purchase money resulting trust. A resulting trust may arise where a transfer of property is made to one person and the purchase price is paid by another. Morrison v. Farmer, 147 Tex. 122, 213 S. W.2d 813 (1948); Restatement of the Law of Trusts 2d, Sec. 440 et seq.

The crucial question here is whether there is any evidence to support the jury's finding that $3,500.00 in funds belonging to

John Marvin White were used by Byrta Carson for the purchase of the real property in question.

The parties stipulated that John Marvin White died on May 17, 1967, leaving a will which has been admitted to probate, and that appellees are the sole beneficiaries, legatees and devisees under such will. On February 17, 1966, an earnest money contract was entered into between Miss Carson and Jode Construction Co., wherein Miss Carson agreed to purchase the real estate involved, subject to certain conditions provided therein. In connection therewith, Miss Carson gave a check to Jode Construction Co., dated February 19, 1966, for the $500.00 earnest money deposit called for in said contract, which check was cashed by Jode Construction Co. on February 22, 1966. Thereafter, on April 14, 1966, Miss Carson executed a Builders and Mechanics Lien Note in the amount of $35,950, payable to Jode Construction Co., on or before six months after date, and a Builders and Mechanics Lien Contract with Jode Construction Co. for the construction of a dwelling house on the real property involved and securing the note above described. On April 21, 1966, Miss Carson and Jode Construction Co. executed a construction contract for the erection of such residence, which contract provided for a consideration of $35,950, with $6,950 to be paid on start of construction, $4,000 when the framing was completed, and $25,000 when the house was completed and accepted. On April 27, 1966, the real estate in question was conveyed to Miss Carson by Oak Hills Properties. Miss Carson testified that at the time she signed the earnest money contract for the purchase of the lot involved and paid the $500.00 earnest money provided for in said contract she intended to buy such lot for herself, and that the home constructed thereon was built for her.

Joe Couch was the owner of Jode Construction Co. and the person who negotiated the sale of the property in question. He testified that he entered into a contract

with Miss Carson to build her a house and sell her some land to build it on. He testified that all of his business dealings were with Miss Carson; that White was present when the lot was selected, and that he and White offered some comments and suggestions in connection with the selection of the lot; that while White was present on some occasions during the building of the house, Couch's dealings were with Miss Carson; that he did not own the lot which was conveyed to Miss Carson, but that he had access to it and had an arrangement with the owner with regard thereto, and he had the property transferred to Miss Carson for the sum of $500.00. He testified that the initial payment for the purchase of the lot and for the commencement of construction was $6,950, which consisted of the check for $500 given by Miss Carson on February 19, 1966, a check for $5,500 given by Miss Carson to Alamo Title Co., dated April 21, 1966, and a check for $950 given by Miss Carson to Jode Construction Co., dated April 21, 1966. All of such checks were introduced into evidence, as were the deed and contracts previously referred to. There is nothing in the testimony of Couch to indicate that White had any interest whatsoever in the property involved, and although White was present on some occasions when transactions were being carried on between Couch and Miss Carson, there is not one iota of testimony that White ever at any time claimed to have any interest in the property.

There was introduced into evidence a check dated April 20, 1966, in the amount of $3,500, signed by J. M. White, payable to Byrta Carson, drawn on the Jefferson State Bank, which check contains no notation thereon that would in any way tie it in with the property involved.

An officer of Frost National Bank testified that Miss Carson had a checking account in the Frost National Bank and that their records evidenced the deposit of $3,-500 to her account, which was posted to such account on April 22, 1966, and which

was the check given by J. M. White. He also testified that such records showed a check of $5,500 given by Miss Carson to Alamo Title Co., which was paid on April 25, 1966, and a check for $950 given by Miss Carson to Jode Construction Co., which check was also paid on April 25, 1966. He testified that on April 20, 1966, Miss Carson had a balance in her checking account of $5,899.07; that after the check of $3,500 was deposited to her account her balance was $9,325.91; that on April 25, 1966, prior to the time that the check for $5,500 and the check for $950 were cashed, she had a balance in such account of $9,-224.26, and that after both such checks were cashed she had a balance of $2,774.26. It appears from such records that on the date Miss Carson gave the check for $5,-500, the purchase price of the lot involved, she had an excess of such amount in her account, and that even without such deposit of $3,500 she would have had in excess of $5,500 in her account on the date the $5,500 check was cashed, but would not have had sufficient funds to pay both the check for $5,500 and the check for $950 given to Jode Construction Co. The bank officer stated that on April 20, 1966, Miss Carson also had two savings accounts in the Frost National Bank, one of which had a balance of $10,734.74, and the other a balance of $1,518.

Miss Carson testified that she was a school teacher by profession, but that she also did work for a book publishing company and was the author of eight film strips which were used in the school system. She stated that on April 20, 1966, she was living in an apartment by herself; that after a fire in such apartment in January, 1966, destroyed some valuable manuscripts and illustrations which she had, she decided to build a house, which was to include a basement to store her valuable papers and a place for her to work, and an upstairs for her to live in. That shortly thereafter she contacted Joe Couch, who had built a home for a friend of hers, and that after some discussion Couch agreed to sell her a

lot for $5,500, and in connection therewith plans were drawn up for the house; that a contract was made with Mr. Couch, the owner of Jode Construction Co., to build a home on such lot; that she signed such contract alone, that no one assisted her in connection with the signing of the contract or in the planning of the home. She testified that she paid a total of $44,525 for the lot and the improvements constructed thereon, of which amount $25,000 was a permanent loan made to her by First Federal, and that the difference between such $25,000 loan and the ultimate cost of $44,525 was paid by her.

■ Clear, satisfactory and convincing evidence is required to prove a trust by parol. Jones v. Siler, 129 Tex. 18, 100 S. W.2d 352 (1937); Elbert v. Waples-Platter Co., 156 S.W.2d 146 (Tex.Civ.App.—Fort Worth 1941, writ ref'd n.r.e.); Fasman v. Pottashnick, 188 Md. 105, 51 A.2d 664. Where a transfer of property is made to one person and another seeks to enforce a resulting trust in his favor on the ground that he paid the purchase price, he has the burden of proving by clear and convincing evidence that he paid the purchase price. Ratliff v. Clift, 312 S.W.2d 315 (Tex.Civ. App.—Amarillo 1958, writ ref'd n.r.e.); Hill v. Bowen, 8 Ill.2d 527, 134 N.E.2d 769; Cole v. Fogel, 210 Or. 257, 310 P.2d 315; Bisceglia v. Bisceglia, 340 Pa. 293, 17 A.2d 182; Mouser v. O'Sullivan, 22 Wash.2d 543, 156 P.2d 655; Restatement of the Law of Trusts 2d, Sec. 458; Bogert Trusts & Trustees, 2d Ed., Sec. 464. "There is a strong presumption in favor of the correctness of a deed or other instrument as written and executed, and this fair and reasonable presumption will prevail, unless the party who alleges that it does not express the truth overcomes the presumption, and shows the contrary by satisfactory evidence which is clear, strong, and convincing. * * * The rule which calls for that kind of evidence in such a case was adopted and was necessary for the safety of titles, and to insure that contracts, deeds, and other solemn instruments should not be lightly set aside or changed." McWhirter v. McWhirter, 155 N.C. 145, 147, 71 S.E. 59, 60; Bogert, § 464, supra.

■ There is nothing in the record to indicate whether such check for $3,500 delivered to Miss Carson by White was given as a loan, a gift, a repayment of an existing debt, or what. To support the jury's verdict, one must resort to conjecture and speculation. All of the testimony in the record is to the effect that Miss Carson bought the lot for herself alone and had a house built and erected thereon for herself. There is not one scintilla of evidence in the record that White was to have any beneficial interest in the property in question. The only testimony as to whose money went into the purchase of the lot involved and the construction of a residence thereon was that of Miss Carson, who was prohibited by the Dead Man's Statute from testifying as to any transaction with or statement by the decedent, White.[1] Miss Carson testified that the total cost of the property purchased and the construction of the residence thereon was $44,525, of which amount $25,000 was a loan made to her secured by a note and mortgage given by her alone, and that the balance of the consideration for the property purchased and the construction of the residence thereon was paid by her. Her testimony is corroborated in part by the only independent witness, Joe Couch. Such testimony stands uncontradicted. There is no evidence to support the jury's finding that $3,500 in funds belonging to John Marvin White were used by Byrta Carson for the purchase of the real property in question. The judgment of the trial court is reversed, and judgment here rendered that appellees take nothing against appellant.

1. Article 3716, Vernon's Ann.Civ.St.